**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In the Matter of:

**GOODRICH QUALITY THEATERS, INC.**

Case No. 20-00759-swd
Chapter 11
Hon. Scott W. Dales

Debtor

_____/

**FIRST DAY MOTION FOR ENTRY OF AN ORDER (i) AUTHORIZING DEBTOR TO PAY EMPLOYEE OBLIGATIONS AND CONTINUE EMPLOYEE BENEFIT PROGRAMS; (ii) AUTHORIZING DEBTOR TO PAY CERTAIN PRE-PETITION TAX OBLIGATIONS; AND (iii) DIRECTING FINANCIAL INSTITUTIONS TO HONOR OUTSTANDING EMPLOYEE-OBLIGATION PAYMENTS**

The above-captioned debtor (the "Debtor") by and through its below-signed proposed counsel for its *First Day Motion for Entry of an Order (i) Authorizing Debtor to Pay Employee Obligations and Continue Employee Benefit Programs; (ii) Authorizing Debtor to Pay Certain Pre-Petition Tax Obligations, and (iii) Directing Financial Institutions to Honor Outstanding Employee-Obligation Payments* (the "Motion"), states as follows:

**Jurisdiction**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334.

2. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue of this proceeding and the Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409.

**Background**

4.   On February 25, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition for relief (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code")[1].

5.   The Debtor continues to operate its business and manage its financial affairs and prospects as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

6.   No examiner or official committee has been appointed in this Chapter 11 Case.

7.   The majority of the value of the Debtor's business arises from its ongoing operations. The Employees (as defined below) are instrumental in allowing the Debtor to continue operating as a going concern.

**Relief Requested**

8.   Pursuant to sections 105(a), 363(b), and 507(a) of the Bankruptcy Code, the Debtor respectfully requests that the Court enter an order (a) authorizing Debtor, in its sole discretion, to pay and honor the Employee Obligations and Employee Benefits (as defined herein); (b) directing Debtor's banks and the financial institutions to receive, process, honor, and pay all checks and electronic payments related to the Employee Obligations and Employee Benefits; and (c) permitting the Debtor to change or discontinue and implement new Employee Obligations or Employee Benefits in its sole discretion and without further approval of the Court.

**The Debtor and its Payroll**

9.   As of the Petition Date, the Debtor, employs approximately 1,150 employees (the "Employees")[2] in the ordinary course of its business and incurs obligations to them for

---

[1] Unless otherwise stated to the contrary, all section references herein are references to sections of the Bankruptcy code.

[2] The term Employees shall also be deemed to include any former Employees who are still receiving Employee Obligation or Employee Benefit payments, such as, for example, accrued vacation time.

2

compensation for services. Of those employees, 150 are full time (of which 4 are hourly and 146 are salary) and 1,000 are part-time.

10. One (1) of the Employees, *i.e.* Robert Goodrich, is an Insider (as defined in 11 U.S.C. § 101(31)).

11. The Debtor has costs and obligations in respect of the Employees relating to the period before the Petition Date, as set forth specifically below. Certain of these costs and obligations are outstanding and due and payable, while others will become due and payable after the Petition Date in the original course of the Debtor's business.

## Wages, Taxes and Expense Reimbursements

12. Before the Petition Date, and in the ordinary course of business, the Debtor typically paid obligations relating to wages (the "Wages") (i) for hourly employees, every week on Friday for the week period ending seven days earlier and (ii) for salaried employees. The Debtor pays the Wages by direct deposit and some checks.

13. On February 27, 2020, the Debtor funded payroll for the wages to be paid on February 27, 2020 (the "February 27 Payroll") in an amount estimated at $324,305.98.

14. Post-Petition Date, the Debtor also funded certain other tax and/or employee benefit obligations in the amount of $78,124.44 in ACH related payroll taxes and withholding items (including *inter alia* child support payments) ("ACH Payments").

15. Additionally, the Debtor is required by law to withhold from its Employees' Wages amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes (collectively the "Withholding Taxes") and to remit the same to the appropriate taxing authorities (collectively the "Taxing Authorities").

16. In addition, the Debtor is required to make matching payments from its own funds on account of social security and Medicare taxes, and to pay, based on a percentage of gross payroll

3

and subject to state-imposed limits, additional amounts to the Taxing Authorities for, among other things, state and federal unemployment insurance (collectively the "Employer Payroll Taxes" and, together with the ACH Payments and Withholding Taxes, the "Payroll Taxes").

17. Certain Employees incur various expenses in the discharge of their ordinary duties, such as travel and meal expenses. Because these expenses are incurred as part of their official duties and in furtherance of the Debtor's business, the Debtor reimburses the Employees in full for these expenses (the "Expense Reimbursements"),[3] subject to the submission of proper documentation to the appropriate accounting department.

18. A majority of Expense Reimbursements are travel-related expenses related to sales or client development. The Debtor reimburses expenses on a rolling basis, with a time lag of up to two weeks between submission or the request for reimbursement and payment. It is difficult to determine what Expense Reimbursements that accrued prepetition are outstanding on the Petition Date because of the lag time in the submission of such requests.

## Employee Benefit Programs

19. In the ordinary course of its business, the Debtor established certain employee benefit programs (collectively the "Employee Benefits"), including without limitation, paid time off and medical insurance programs.

20. Under its paid time off program (the "PTO Plan"), eligible employees are entitled to receive paid vacation and personal days based on seniority and attendance. Many of the Employees are entitled to unused vacation and personal days based on their prepetition service.

21. Further, the Debtor provides reasonable paid bereavement, jury duty and other similar leave to eligible full-time Employees.

---

[3] Expense Reimbursement, Payroll Taxes, Withholding Taxes, and Wages are collectively referred to as "Employee Obligations"

4

22. Additionally, the Debtor sponsors several health and welfare plans to its employees, including medical insurance.

23. Medical insurance is provided to the Employees through Blue Cross Blue Shield. The Debtor pays the overwhelming majority of the health insurance expenses for all Employees, and the participating Employees pay the remaining balance through deduction from their Wages. The Debtor withholds amounts ranging from $2,000.00 to $2,500.00 per month in the aggregate from Employee's Wages on account of medical insurance, which amount is paid monthly together with Debtor's portion (approximately $140,000.00 per month) to the medical insurer.

24. The Debtor also offers its Employees access to various vision, dental, accidental death and dismemberment insurance, 401(k) and flex spending accounts (the "Supplemental Benefits"), which are funded entirely through Employee Wage deductions, which are paid monthly to the applicable insurer. The Debtor pays 100% for life insurance with a face value of $15,000 for all Employees.

### Workers' Compensation Plans

25. The laws of the State of Michigan require the Debtor to maintain workers' compensation policies and programs to provide the relevant Employees with coverage for claims arising from or related to their employment with the Debtor (the "Workers' Compensation Programs"). The annual premium for the Debtor's Workers' Compensation policy is approximately $140,000.00. An audit will be conducted on or before April 30, 2020. An annual payment will be due after the audit in an additional annual payment of approximately $140,000.00.

26. Pursuant to sections 363(b) and 105(a) of the Bankruptcy Code, the Debtor seeks authority to, in its sole discretion, (i) continue the Workers' Compensation Programs on an uninterrupted basis, consistent with the Debtor's practices prior to the Petition Date, and (ii) make

all premium, administrative fee, claim and other payments for obligations related to the Workers' Compensation Programs, including the prepetition amounts described above.

### Basis for Relief

27. Under section 507(a)(4)(A), each employee is entitled to a priority claim of up to $13,650 for "wages, salaries, or commissions, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date. Also, section 507(a)(5) provides up to $13,650 of priority status for employees' claims for contributions to certain employee-benefit plans, less amounts paid under section 507(a)(4).

28. Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1), and section 105(a) provides, *inter alia*, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this Title."

29. The Debtor believes that most of the Employee Obligations owed by the Debtor and relating to the period before the Petition Date constitutes priority claims under sections 507(a)(4) and (a)(5) of the Bankruptcy Code. As priority claims, the Debtor's estates must pay the Employee Obligations in full before satisfying any of the Debtor's general unsecured obligations. Accordingly, the relief requested may affect only the timing of the payment of these priority obligations, and it will not prejudice the rights of general unsecured creditors or other parties in interest.

30. As of the Petition Date, the Debtor believes that no Employees have claims for Employee Obligations (this does not include obligations under the PTO Plan that are not current cash-pay obligations of the Debtor as of the Petition Date) in excess of $13,650.

31. Any delay or failure to pay wages, salaries, benefits, and other similar items would irreparably impair the Employees' morale, dedication, confidence, and cooperation and would

adversely impact the Debtor's relationship with their Employees at a time when the Employees' support is critical to the success of the Debtor's Chapter 11 Case. The Debtor simply cannot risk the substantial damage to the value of its business that would inevitably attend any decline in the Employees' morale.

32. Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within 21 days after the filing of the petition if the relief is necessary to avoid immediate and irreparable harm. Absent an order granting the relief requested in this Motion, the Employees will suffer undue hardship and, in many instances, serious financial difficulties, as the amounts in question are needed to enable certain of the Employees to meet their own personal financial obligations. Without the requested relief, the stability of the Debtor will be irreparably undermined because otherwise loyal Employees will seek employment alternatives. The Debtor will suffer imminent and irreparable harm if the relief requested is not granted. Accordingly, the Debtor submits that the requirements of Bankruptcy Rule 6003 are met and the relief sought herein should be granted immediately.

33. With respect to Payroll Taxes in particular, the payment of such taxes will not prejudice other creditors of the Debtor's estate, as the relevant Taxing Authorities generally would hold priority claims under section 507(a)(8) of the Bankruptcy Code in respect of such obligations. Moreover, the portion of the Payroll Taxes withheld from an Employee's wages on behalf of the applicable Taxing Authority is held in trust by the Debtor. As such, these Payroll Taxes are not property of the Debtor's estate under section 541. *See, e.g.,* Begier v. IRS, 496 U.S. 53, 67 (1990) (withholding taxes are property held by a debtor in trust for another and, as such, are not property of the debtor's estates).

34. Accordingly, by this Motion, the Debtor also seeks authority pursuant to sections 507(a), 363(b), and 105(a) to pay, subject to the Debtor's sole discretion, the Employee

7

Obligations, and the Employee Benefits as they become due and owing, and as further described in this Motion, during the pendency of this case and to continue, uninterrupted, its practices, programs and policies with respect to its Employees, as such practices, programs, and policies were in effect as of the Petition Date.

35. Any delay in paying the obligations relating to the above-mentioned obligations would be detrimental to the Debtor, its creditors, and the estate. Accordingly, and to successfully implement the foregoing, the Debtor seeks a waiver of the notice requirements under Bankruptcy Rule 6004(a) and any stay of the order granting this motion, whether imposed by Bankruptcy Rule 6004(g) or otherwise.

***Applicable Banks Should be Authorized to Honor and Pay Checks Issued and Make Other Transfers to Pay the Employee Obligations***

36. The Debtor further requests that the Court authorize the Debtor's Banks to receive, process, honor, and pay all prepetition and post-petition checks issued or to be issued, and electronic fund transfers requested or to be requested, by the Debtor in respect of the Employee Obligations and Employee Benefits. The Debtor also seeks authority to issue new post-petition checks or effect new electronic fund transfers on account of the Employee Obligations and Employee Benefits to replace any prepetition checks or electronic fund transfer requests that may be dishonored or rejected.

37. As a result of the commencement of the Debtor's Chapter 11 Case, and in the absence of an order of the Court providing otherwise, the Banks may dishonor or reject the Debtor's checks, wire transfers, and direct deposit transfers in respect of the Employee Obligations.

38. The Debtor represents that each of these checks or transfers is or will be drawn on the Debtor's payroll and general disbursement accounts and can be readily identified as relating directly to payment of the Employee Obligations or Employee Benefits. Accordingly, the Debtor

8

believes that the Banks will not inadvertently honor prepetition checks and transfers other than those for Employee Obligations or Employee Benefits. Authorization to pay all amounts on account of Employee Obligations or Employee Benefits shall not be deemed to constitute post-petition assumption or adoption of any contract, program, or policy pursuant to sections 365 or 1113 of the Bankruptcy Code. The Debtor is in the process of reviewing these matters and reserves all of its rights under the Bankruptcy Code with respect thereto. Moreover, authorization to pay all amounts on account of Employee Obligations and Employee Benefits shall not affect the Debtor's right to contest the amount or validity of any Employee Obligations and Employee Benefits, including, without limitation, the Payroll Taxes that may be due to any Taxing Authority.

## Notice

39. Notice of Motion will be given to the following parties, or in lieu thereof, to their counsel: the United States Trustee for the Western District of Michigan, Kelly Hagan, Esq., identified secured creditors, the Debtor's top twenty (20) unsecured creditors, (d) counsel to the DIP Lender, and all parties of record in this Case electronically. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

40. No previous motion for the requested relief has been made to this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order, substantially in the form attached as **Exhibit A** (i) authorizing Debtor, in its sole discretion, to pay and honor the Employee Obligations and Employee Benefit; (ii) directing Debtor's banks and other financial institutions to receive, process, honor, and pay all checks and electronic payments related to the Employee Obligations and Employee Benefits; and (iii) permitting the Debtor to change or discontinue and implement new Employee Obligations or Employee Benefits in their sole discretion and without further approval of the Court.

Dated: March 2, 2020

                                              Respectfully submitted,

                                              KELLER & ALMASSIAN, PLC

                                              /s/ A. Todd Almassian
                                              A. Todd Almassian (P55467)
                                              Greg J. Ekdahl (P67768)
                                              230 East Fulton Street
                                              Grand Rapids, MI 49503
                                              (616) 364-2100
                                              talmassian@kalawgr.com

## EXHIBIT A

### UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF MICHIGAN

In the Matter of:

**GOODRICH QUALITY THEATERS, INC**

Case No. 20-00759-swd
Chapter 11
Hon. Scott W. Dales

Debtor

_____/

**FIRST DAY ORDER (i) AUTHORIZING DEBTOR TO PAY EMPLOYEE OBLIGATIONS AND CONTINUE EMPLOYEE BENEFIT PROGRAMS; (ii) AUTHORIZING DEBTOR TO PAY CERTAIN PRE-PETITION TAX OBLIGATIONS; AND (iii) DIRECTING FINANCIAL INSTITUTIONS TO HONOR OUTSTANDING EMPLOYEE-OBLIGATION PAYMENTS**

Upon the *First Day Motion for Entry of an Order (i) Authorizing Debtor to Pay Employee Obligations and Continue Employee Benefit Programs; (ii) Authorizing Debtor to Pay Certain Pre-Petition Tax Obligations, and (iii) Directing Financial Institutions to Honor Outstanding Employee-Obligation Payments* (the "Motion"); and due and sufficient notice of the Motion having been given under the particular circumstances; and it appearing that no other or further notice need be provided; and it appearing that the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and it appearing that this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and it appearing that venue of this proceeding and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, creditors, and other parties-in-interest; and after due deliberation and sufficient cause appearing therefore,

**IT IS HEREBY ORDERED:**

1. The Motion is **GRANTED.**

2. That the Debtor is authorized, but not directed, to pay the Employee Obligations and Employee Benefits as set forth in the Motion.

3. That the Debtor is authorized, but not directed, to continue providing employee-benefits programs, including health, insurance, workers compensation, and all other employee benefits that the Debtor has historically paid in the ordinary course of business and as further set forth in the Motion and collectively defined therein as the Employee Benefits.

4. That the Debtor is authorized, but not directed, to pay all incidental costs and expenses related to the Employee Obligations and Employee Benefits, including without limitation, the costs associated with the Workers Compensation Plan.

5. The Debtor's banks and other financial institutions are directed to receive, process, honor, and pay all checks and electronic payments related to the Employee Obligations, Employee Benefits, and the Workers Compensation Plan.

6. Payment of the Employee Obligations and Benefits is subject to the terms of any order authorizing the Debtor to use cash collateral, and without prejudice to the Debtor's right to change or discontinue and implement new Employee Obligations or Employee Benefits in their sole discretion and without further approval of the Court, in the ordinary course of its business.

7. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation of this Order.

**END OF ORDER**