UNITED STATES BANKRUPTCY COURT

WESTERN DISTRICT OF MICHIGAN

In the Matter of:

**GOODRICH QUALITY THEATERS, INC.**

Debtor

_____/

Case No. 20-00759-swd

Chapter 11

Hon. Scott W. Dales

**DEBTOR'S APPLICATION PURSUANT TO
11 U.S.C. §§ 327(a) AND 328(a) TO EMPLOY AND RETAIN
STOUT RISIUS ROSS ADVISORS, LLC AS INVESTMENT BANKER
EFFECTIVE AS OF MARCH 1, 2020**

Goodrich Quality Theaters, Inc. (the "Debtor"), acting by and through its proposed counsel, and pursuant to §§ 327(a) and 328(a) respectfully seeks by this application (the "**Application**") the issuance and entry of an order, authorizing and approving the retention and employment of Stout Risius Ross Advisors, LLC ("**Stout**") as Investment Banker to the Debtor in connection with this chapter 11 case. In support of this Application, the Debtor submits the Declaration of Michael Krakovsky, the Managing Director and Head of Special Situations, which is attached hereto as **Exhibit A** (the "**Krakovsky Declaration**"), and the Debtor respectfully represents as follows:

**JURISDICTION**

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief requested herein are Bankruptcy Code §§ 363 and 365.

**INTRODUCTION**

2. On February 25, 2020 (the "Petition Date"), the Debtor commenced its reorganization case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§

101-1330, *et seq.* (the "Bankruptcy Code").

3. The Debtor continues to manage its properties and operate its business as debtor-in-possession pursuant to Bankruptcy Code §§ 1107 and 1108. The case was initially incorrectly filed by Debtor's previous counsel as a Chapter 11 Small Business case under subchapter V, and as such, on February 26, 2020, Kelly M. Hagan was appointed as Subchapter V trustee pursuant to 11 U.S.C. § 1183(a). No examiner, or official committee has been appointed in this case.

4. The factual background relating to the Debtor's business and the commencement of this chapter 11 case is set forth in detail in the *Declaration of Robert Emmett Goodrich In Support Of Chapter 11 Petition And First Day Motions*, (the "Goodrich Declaration") filed at DN 45.

The Debtor and its Business.

5. The Debtor, a Michigan corporation, owns and operates twenty-nine (29) movie theaters located in west Michigan, Indiana, and Illinois. The Debtor is also a party to a joint venture that operates one movie theater in Florida. The Debtor has hundreds of employees and is headquartered in Grand Rapids, Michigan.

Capital Structure.

6. Prior to the Petition Date, Debtor, CIBC Bank USA, as Administrative Agent, Lead Arranger and Lender ("Agent"), on behalf of itself, Macatawa Bank as Lender ("Macatawa"), and Independent Bank as Lender ("Independent") (CIBC, Macatawa, and Independent, the "Lenders"), entered into that certain Second Amended and Restated Credit Agreement dated September 27, 2018, as amended by a Limited Waiver and First Amendment to Second Amended and Restated Credit Agreement and Loan Documents dated November 15, 2019 (as so amended and as it may be further amended or supplemented from time to time, the "Credit Agreement").

Circumstances Leading to this Filing.

7. As a result of, among other things, the movie theater marketplace, and the need for

various improvements to maintain Debtor's properties and to improve its position in the increasingly more competitive entertainment arena, the Debtors have failed to satisfy certain production and financial covenants under the Credit Agreement.

8. The Debtor has worked diligently to facilitate a global restructuring transaction, including entering into a forbearance agreement with Agent. Prior to the Petition Date, on February 24, 2020, Agent sent Debtor a Notice of Acceleration and Demand to accelerate the entire remaining unpaid balance of obligations owed to the Agent, and to advise Debtor that Agent was immediately setting-off the Debtor's bank accounts at Agent and would apply the amounts in such accounts to obligations owed. The Debtor has not been able to obtain agreement on the terms of a restructuring and intends to utilize the bankruptcy process to attempt to achieve a consensual restructuring, sale of assets, or some other appropriate alternative.

## RELIEF REQUESTED

9. By this Application, the Debtor seeks authorization to employ and retain Stout Risius Ross Advisors, LLC ("Stout") as its investment banker pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code. , upon the terms and conditions contained in that certain engagement letter dated March 5, 2020, by and between Stout and the Debtor (the "Engagement Letter"), attached as **Schedule 1** to the Krakovsky Declaration which is Exhibit A.

## SERVICES TO BE PROVIDED

10. The Debtor's Engagement Letter with Stout outlines the terms of which shall govern the Debtor's retention of Stout except as explicitly set forth herein or in any order granting this Application. Consistent with the terms of the Engagement Letter, Stout's services in this Chapter 11 Case will include the following:

> (i) assisting the Debtor in the development, preparation and distribution of selected information, documents and other materials in an effort to create interest in and to

consummate any Transaction(s),[1] including, if appropriate, assisting the Debtor in the preparation of an offering memorandum;

(ii) soliciting and evaluating indications of interest and proposals regarding any Transaction(s) from current and/or potential equity investors, acquirers and/or strategic partners (collectively, "Investors");

(iii) assisting the Debtor with the development, structuring, negotiation and implementation of any Transaction(s), including participating as a representative of the Debtor in negotiations with creditors and other parties involved in any Transaction(s);

(iv) advising and attending meetings of the Debtor's Board of Directors, creditor groups, official constituencies and other interested parties, as the Debtor and Stout determine to be necessary or desirable;

(v) providing expert advice and testimony regarding financial matters related to any Transaction(s), if necessary; and

(vi) providing such other customary financial advisory and investment banking services as may be agreed upon by Stout and the Debtor in connection with the Transaction.

## **QUALIFICATIONS OF STOUT**

11. In consideration of the size and complexity of the Debtor's business, as well as the exigencies of the circumstances and the need to conduct an expeditious sale of the Debtor's assets, the Debtor has determined that the services of an experienced investment banker will substantially enhance the Debtor's goal of maximizing the value of its estate. Stout is well qualified to provide these services in light of their extensive knowledge and expertise with respect to Bankruptcy Code

---

[1] Per the Engagement Letter, "Transaction" means: "As used in this Agreement, the term "Transaction" shall mean any transaction or series of related transactions that constitute the disposition to one or more third parties (including, without limitation, any person, group of persons, partnership, corporation or other entity, and also including, among others, any of the existing owners, shareholders, employees, or creditors of any entity comprising the Company) in one or a series of related transactions of (a) all or more than a majority of the equity securities of any entity comprising the Company, (b) any significant portion of the assets (including the assignment of any executory contracts) or operations of any entity comprising the Company or any joint venture or partnership or other entity formed by it, in either case, including, without limitation, through a sale or exchange of capital stock, options or assets with or without a purchase option, a merger, consolidation or other business combination, an exchange or tender offer, credit bid by senior lenders, a recapitalization, the formation of a joint venture, partnership or similar entity, or any similar transaction, including, without limitation, any sale transaction under Sections 363, 1129 or any other provision of Title 11, United States Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code"). A Transaction shall not include any transaction or disposition of assets where no qualifying bids are submitted in connection with bidding procedures approved in the Chapter 11 Case and thereafter any Secured Lender exercises its rights against such assets including through foreclosure, credit bid under section 363(k) of the Bankruptcy Code, or otherwise."

section 363 sales in chapter 11 proceedings. Debtor has received a number of inquiries from potential stalking horse buyers.

12. Stout's professionals have represented a wide range of debtors and stakeholders in a number of distressed situations over the last 20 years, including unsecured creditors, senior lenders, equity holders and debtors both in and out-of-court. Indeed, Stout's professionals dedicated to this matter have represented constituents in a wide range of in-court proceedings including LifeCare Holdings, Acadiana Management Group Altegrity, Inc., Hawaiian Telcom, Curative Health Services, Chemtura Corporation, Oriental Trading Company, Inc., Baxano Surgical, Inc., Frontier Airlines, and many other transactions. A short biographical summary of the senior Stout professionals dedicated to this matter is provided in the following Paragraph.

13. Michael Krakovsky is a special situation and financial restructuring expert with over twenty (20) years of experience in investment banking primarily advising middle-market debtors and creditors in both in and out-of-court restructuring transactions with a focus on distressed companies as both an investment banker and principal investor. Prior to joining Stout (where he leads the firm's Special Situations practice) Mr. Krakovsky spent thirteen (13) years as a senior member of the Financial Restructuring Group at Houlihan Lokey. He was also previously a Managing Director of Levine Leichtman's Deep Value distressed debt fund. Mr. Krakovsky began his career as a transactional attorney at Irell & Manella LLP.

14. Keith M. Sipes is a Managing Director and Head of the Technology, Media, and Telecom (TMT) practice in the Investment Banking group. Keith has more than 18 years of experience providing strategic advisory and corporate financial services to companies spanning the broader TMT market. Keith's advisory experience includes mergers, acquisitions, divestitures, joint ventures, restructurings, shareholder defense, leveraged buyouts, recapitalizations, and equity and

debt financing. He has successfully executed M&A transactions exceeding $70 billion in value and financing assignments raising more than $25 billion in gross proceeds.

Keith's experience spans a wide range of TMT verticals including artificial intelligence, broadcasting, cable, communications, consumer technology, data and analytics, digital media and internet, ecommerce, film and entertainment, information services, interactive media, IoT/ IT services, mobile technology, publishing, SaaS, tech-enabled business services, telecom equipment and services, and wireless technology and services. Furthermore, he has advised on more than 75 transactions for private, early-stage, and public Fortune 100 companies.
Representative clients include 3Com, Activision, Amazon, AMC Entertainment, Angie's List, AVL Digital, Brightcove, Charter Communications, Dex Media, Electronic Arts, Green Smoke, Kateeva, Language Line, LeapFrog Enterprises, Lions Gate Entertainment, Live Nation, Martha Stewart Living, MCI, MGM, Netflix, Nextel Communications, Pandora, RealD, Redbox, Sprint Nextel, The Hearst Corporation, The Walt Disney Company, Time Warner Viacom, Vivendi and Yamaha.

Prior to joining Stout, Keith led the Technology, Media, and Telecom investment banking practice at Sterne Agee CRT. He also spent significant portions of his TMT investment banking career with Merrill Lynch & Co., Lazard Fréres & Co., and Thomas Weisel Partners.

15.     The Debtor initially engaged Stout on or around March 1, 2020.  To date, Stout has engaged in due diligence of the Debtor's business, including their operations, assets, capital structure, and contractual arrangements to build a foundation for a restructuring strategy.  Moreover, Stout has performed diligence on the Debtor's cash flows and liquidity.

**COMPENSATION AND OTHER TERMS OF ENGAGEMENT**

16.     Stout's decision to advise and assist the Debtor in connection with the Chapter 11 case is subject to its ability to be retained in accordance with the terms of the Engagement Letter pursuant to section 328(a), and not section 330, of the Bankruptcy Code.

17. In consideration of the services provided by Stout, and as more fully described in the Engagement Letter, subject to the Bankruptcy Court's approval, the Debtor and Stout have agreed that Stout shall, in respect of its services, be compensated pursuant to the Fee Structure and Transaction Fee Structure pursuant to its Engagement Agreement attached as Schedule 1 to Exhibit A.

18. The Debtor has agreed to reimburse Stout for its reasonable out of-pocket expenses incurred from time to time, but in no event shall Stout exceed $35,000 in total reimbursable expenses during the term of this engagement without prior written consent of the Company.

19. Further, the Debtor has also agreed to indemnify Stout under the Paragraph 20 the Engagement Letter.

20. The terms of the Engagement Letter and Indemnification Agreement were negotiated at arm's-length, and the Debtor respectfully submits that the indemnification, contribution, and reimbursement provisions are reasonable and appropriate under the circumstances.

21. Consistent with the practice in this jurisdiction, the Debtor requests that the Bankruptcy Court approve the indemnification, contribution, and reimbursement provisions reflected in the Engagement Letter, subject to the modifications reflected in the Order. The Debtor believes that the indemnification provisions described in the Indemnification Agreement, as modified by the Order, are appropriate under the circumstances, consistent with recent orders entered in this jurisdiction, and should be approved.

22. To the best of the Debtor's knowledge, information, and belief, no promises have been received by Stout as to compensation in connection with this Chapter 11 Case other than as outlined in the Engagement Letter, and Stout has no agreement with any other entity to share any compensation received with any person other than the principals and employees of Stout.

23. The Debtor understands that Stout intends to apply to the Court for allowance of compensation and reimbursement of expenses for its investment banking services in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, corresponding Local Rules, the Proposed Order, orders of the Court, and any applicable guidelines established by the U.S. Trustee regarding submission and approval of fee applications.

24. Stout will maintain records in support of any actual, necessary costs and expenses incurred in connection with the rendering of its services in the Chapter 11 Case. However, because: (a) it is not the general practice of investment banking firms such as Stout to keep detailed time records similar to those customarily kept by attorneys; (b) Stout does not ordinarily keep time records on a "project category" basis; and (c) Stout's compensation is based on a fixed Monthly Fee and the Transaction Fee, as applicable, the Debtor respectfully requests that Stout's professionals only be required to maintain records (in summary format) of the services rendered for the Debtor, including summary descriptions of those services, the approximate time expended in providing those services (in one-half hour increments), and the identity of the professionals who provided those services. Stout will present such records to the Bankruptcy Court in its fee applications. Moreover, the Debtor respectfully requests that Stout's professionals not be required to keep time records on a "project category" basis, that its non-investment banking professional and personnel in administrative departments (including legal) not be required to maintain any time records, and that it not be required to provide or conform to any schedule of hourly rates. To the extent that Stout would otherwise be required to submit more detailed time records for its professionals by the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, or other applicable procedures and orders of the Bankruptcy Court, the Debtor respectfully requests that the Bankruptcy Court waive or excuse compliance with such requirements or guidelines.

25. The Debtor believes that the Fee Structure described above and in the Engagement Letter is consistent with, and typical of, compensation arrangements entered into by Stout and other comparable firms in connection with the rendering of similar services under similar circumstances and is reasonable, market-based, and merited by Stout's restructuring expertise. After discussions and arm's-length negotiations, the Debtor believes that the Fee Structure is reasonable, market-based, and designed to compensate Stout fairly for its work and to cover customary expenses.

## STOUT'S DISINTERESTEDNESS

26. Stout has reviewed the list of parties in interest provided by the Debtor. To the best of Stout's knowledge, as of the date hereof, and except to the extent disclosed herein and in the Krakovsky Declaration, Stout: (a) is a "disinterested person" within the meaning of section 101(14) of the Bankruptcy Code, as required by section 327(a) of the Bankruptcy Code; (b) does not hold or represent an interest adverse to the Debtor's estate; and (c) has no connection to the Debtor, its creditors, or related parties.

27. Given the large number of parties in interest in the Chapter 11 Case, and despite the efforts to identify and disclose Stout's relationships with parties in interest in the Chapter 11 Case, Stout is unable to state with certainty that every client relationship or other connection has been disclosed in the Krakovsky Declaration. Stout will make continued inquiries following the filing of the Application, on a periodic basis, with additional disclosures to the Bankruptcy Court if necessary or otherwise appropriate.

28. The Debtor is informed that Stout will not share any compensation to be paid by the Debtor, in connection with services performed after the Petition Date, with any other person, other than other principals and employees of Stout, to the extent required by section 504 of the Bankruptcy Code.

29. Stout was paid a pre-petition retainer fee of $50,000. Stout incurred pre-petition expenses, which it will waive in conjunction with post-petition retention.

30. To the extent that any new relevant facts or relationships bearing on the matters described herein during the period of Stout's retention are discovered or arise, Stout will use reasonable efforts to promptly file a supplemental declaration, as required by Bankruptcy Rule 2014(a).

### EFFORTS TO AVOID DUPLICATION OF SERVICES

31. By separate applications, the Debtor is seeking to employ other estate professionals. The Debtor believes that the services Stout will provide will be complementary rather than duplicative of the services to be performed by these other professionals. The Debtor is very mindful of the need to avoid duplication of effort as a result of Stout's engagement to provide the services detailed herein.

### BASIS FOR RELIEF

32. Section 327(a) of the Bankruptcy Code authorizes a debtor to employ professionals that "do not represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a).

33. Section 328(a) authorizes the employment of a professional person "on any reasonable terms and conditions of employment, including on retainer, on an hourly basis, on a fixed or percentage fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Accordingly, section 328 of the Bankruptcy Code permits the compensation of professionals, including financial advisors and investment bankers, on more flexible terms that reflect the nature of their services and market conditions.

34. The Debtor believes the terms and conditions of the Engagement Letter are fair, reasonable and market-based terms that should be approved pursuant to section 328(a) of the Bankruptcy Code.

35. Subject to this Court's approval and in accordance with section 328 of the Bankruptcy Code, the applicable Bankruptcy Rules, the Local Rules, any Interim Professional Compensation Order that may be entered by this Court, and any other procedures that may be fixed by the Court, the Debtor requests that Novo receive reimbursement of actual and necessary expenses incurred in connection with their representation of the Debtor in this case.

36. Lastly, courts have approved indemnification provisions for financial advisors similar to those contained in the Engagement Letter. *United Artists Theatre Co. v. Walton*, 315 F.3d 217, 225 (3d Cir.2003) (holding "agreements to indemnify financial advisors for their negligence [as opposed gross negligence or willful misconduct] are reasonable under § 328(a) of the Bankruptcy Code.").

### **RELIEF AS OF MARCH 1, 2020 IS APPROPRIATE**

37. In light of the facts giving rise to the Debtor's filing of this case, the Debtor required the immediate assistance of Stout commencing on March 1, 2020. The Debtor, therefore, requests that the Debtor's retention of Stout be effective as of March 1, 2020. *See In re Ark Co.*, 798 F.2d 645, 648 (3d Cir. 1986) ("[B]ankruptcy courts have the power to authorize retroactive employment of counsel and other professionals under their broad equity power.")

38. Based on the foregoing, the Debtor further submits that no party in interest will be prejudiced by the granting of the employment, effective as of March 1, 2020, because Stout has provided and will continue to provide valuable services to the Debtor's estate in the interim period.

### **NOTICE**

39. Pursuant to Bankruptcy Rule 2014 and Local Bankruptcy Rule 2014, notice of this Application will be given to the following parties, or in lieu thereof, to their counsel: the United States Trustee for the Western District of Michigan. In light of the nature of the relief requested, the Debtor respectfully submits that no further notice is necessary.

40. No previous request for the relief requested herein has been made in this bankruptcy

case to this or any other court.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as the Court may deem just and proper.

Dated:  March 7, 2020 			Respectfully Submitted,

**KELLER & ALMASSIAN, PLC**

By: <u> /s/ A. Todd Almassian</u>
A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
Nicholas S. Laue (P79260)
320 E. Fulton Street
Grand Rapids, MI 49503
Telephone: (616) 364-2100
Facsimile: (616) 364-2200
Email:  talmassian@kalawgr.com
           gekdahl@kalawgr.com
           nlaue@kalawgr.xom

*Proposed Counsel for the Debtor and Debtor in Possession*