UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

GOODRICH QUALITY THEATERS, INC.,

      Debtor.

Case No. 20-00759-swd
Chapter 11
Hon. Scott W. Dales

---

**INTERIM ORDER (I) AUTHORIZING POST-PETITION SECURED
FINANCING PURSUANT TO SECTIONS 105, 361, 362, 364(c)(1), 364(c)(2),
364(c)(3), 364(d)(1), 364(e) AND 503(b) OF THE BANKRUPTCY CODE; (II)
AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL;
(III)PROVIDING ADEQUATE PROTECTION TO THE PREPETITION
LENDERS PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE
BANKRUPTCY CODE; (IV) MODIFYING THE AUTOMATIC STAY
PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE; AND (V)
SCHEDULING A FINAL HEARING**

Upon the motion (the "Motion") filed March 11, 2020 of the above-captioned Debtor

seeking entry of an Order and the Final Order (as defined below):

      a)      authorizing the Borrower to obtain post-petition financing pursuant to

sections 363 and 364 of title 11 of the United States Code (the "Bankruptcy Code") by entering

into a secured, post-petition, debtor in possession credit facility on a super-priority and priming

basis to be executed after the entry of this Order (as may be amended, supplemented or otherwise

modified from time to time, the "DIP Facility") providing for financing in an aggregate principal

amount not to exceed $6,595,139 in the form of a revolving loan for operating costs and other

expenses in accordance with the Budget (the "DIP Loan");

      b)      authorizing the Borrower to execute and enter into the DIP Facility,

among the Borrower and CIBC Bank USA in its individual capacity as the post-petition debtor-

in-possession lender (the "DIP Lender") and all other documents, agreements or instruments in

connection therewith or related thereto, including the DIP Facility, this Order, any Final Order

16134172_5.docx

(as defined below) and all other agreements, documents, notes or instruments related to the DIP Loan, the "DIP Loan Documents") and to perform such other and further acts as may be required in connection with the DIP Loan Documents;

        c)      granting priming liens and super-priority claims to and on behalf of and for the benefit of the DIP Lender in accordance with the DIP Loan Documents, this Order and the Final Order (as defined below) to secure any and all of the Post-petition Obligations (as defined below);

        d)      granting adequate protection to CIBC Bank USA, as Administrative Agent, Lead Arranger and Lender (in that capacity, the "Prepetition Agent"), on behalf of itself, Macatawa Bank as Lender and Independent Bank as Lender (collectively, including CIBC Bank, USA, the "Prepetition Lenders");

        e)      authorizing for the Debtor to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Prepetition Lenders have an interest, and granting adequate protection to the Prepetition Lenders with respect to, inter alia, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral and Cash Collateral;

        f)      approving certain stipulations by the Debtor with respect to the Prepetition Transaction Documents (as defined below) and the liens and security interests arising therefrom;

        g)      pending a final hearing on the Motion (the "Final Hearing"), obtaining the DIP Loan under the DIP Facility in the principal amount not to exceed $3,650,240 to and including the date on which the Final Order is entered;

        h)      modifying the automatic stay, under section 362 of the Bankruptcy Code, to permit the DIP Lender to accelerate the repayment of amounts due and the termination of all commitment under the DIP Facility upon a Termination Event (as defined below);

i)        waiving the Debtor's right to seek surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code and the "equities of the case" exception in Section 552(b) of the Bankruptcy Code, in each case, effective upon entry of the Final Order; and

j)        scheduling the Final Hearing for April 14, 2020, at 1:30 p.m. and approving notice with respect thereto in accordance with Rule 4001(c)(2) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

The Court having considered the Motion, the exhibits attached thereto, including the DIP Loan Documents; and upon the motion (at Docket No. 10) filed by the DIP Lender requesting an emergency hearing and approval of an emergency interim debtor-in-possession financing loan to the Debtor (the "First Interim DIP Loan") approved by the Court in the amount of not less than $402,430.42 in its Order Regarding Emergency Loan (Docket No. 17) (the "First Interim DIP Loan Order"); and upon the Emergency Stipulated Motion to Authorize the Debtor to Use Certain Cash Collateral (Docket No. 67) filed by the Debtor on March 3, 2020 (the "First Cash Collateral Motion") partially granted by the Court by authorizing the Debtor to use a limited amount of cash collateral and granting the Prepetition Lenders certain adequate protection as set forth in the Court's Memorandum of Decision and Order (Docket No. 80) (the "First Interim Cash Collateral Order"); and upon the continued hearing on the First Cash Collateral Motion on March 6, 2020 and the Court's subsequent Interim Order Approving Emergency Stipulated Motion to Authorize the Debtor to Use Certain Cash Collateral (Docket No. 107) (as supplemented by the Supplemental and Amended Exhibit 3 First Interim DIP Loan Order (Docket No. 111) (the "Second Interim Cash Collateral Order") authorizing the Debtor's use of cash collateral pursuant to its terms through March 12, 2020 (the First Interim DIP Loan Order, the First Interim Cash Collateral Order, and the Second Interim Cash Collateral Order,

collectively, the "Prior Interim Orders") (this Order hereby incorporates and supplements the Prior Interim Orders); and a hearing to consider approval of the Interim Amount (as defined in the DIP Facility) having been held and concluded on March 12, 2020 (the "Interim Hearing"); and all objections to the entry of this Interim Order having been withdrawn, resolved or overruled by the Court; the Court having reviewed the declarations submitted with the Motion; and based on the Motion and all of the papers, including the declaration, filed with the Court and all of the proceedings held before the Court; and after due deliberation and consideration and good and sufficient cause appearing therefor;

## THE COURT HEREBY FINDS, DETERMINES, ORDERS AND ADJUDGES:[1]

1.      ***Bankruptcy Petition***. On February 25, 2020 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Debtor is continuing in the management and possession of its business and properties as a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been made for the appointment of a trustee or examiner and no statutory committee (a "Committee") has yet been appointed in the Debtor's chapter 11 case (the "Case").

2.      ***Jurisdiction***. Consideration of this Motion constitutes a "core proceeding" as defined in 28 U.S.C. §§ 157(b)(2). This Court has jurisdiction over this proceeding and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      ***Need for Financing.***

i.      An immediate and critical need exists for the Borrower to obtain funds and use Pre-petition Collateral and Cash Collateral in order, among other things to: (a) continue the

---

[1] To the extent any findings of fact constitute conclusions of law, they are adopted as such, and vice versa, pursuant to Rule 7052.

orderly operation of their businesses; (b) maintain its business relationships with vendors, suppliers and customers; and (c) make payroll, capital expenditures and satisfy other working capital and operational needs. The access of the Debtor to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern value of the Debtor;

ii.    The Debtor is unable to obtain unsecured credit allowable only as an unsecured, administrative expense claim under section 503(b)(1) of the Bankruptcy Code. The Debtor also is unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) or 364(c)(3) without the Debtor's granting to the DIP Lender liens on the assets of the Borrower pursuant to sections 364(c)(2) and 364(c)(3) and 364(d) of the Bankruptcy Code and super-priority administrative expense claim status pursuant to section 364(c)(1) of the Bankruptcy Code for its administrative expense priority claim under section 503(b) of the Bankruptcy Code, in each case as provided by this Order and the DIP Loan Documents;

iii.    The terms of the DIP Facility and the use of Cash Collateral are fair and reasonable, reflect the Debtor's exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

iv.    The ability of the Debtor to continue its business and preserve its going concern value under chapter 11 of the Bankruptcy Code depends upon the Debtor obtaining such financing and using such Cash Collateral.

v.    Without the ability to obtain borrowings under the DIP Facility prior to entry of a Final Order, the Debtor faces imminent interruption of its business operations.

vi.      It is in the best interests of the Debtor's estate that it be allowed to finance its operations and use Cash Collateral under the terms and conditions set forth herein and in the DIP Loan Documents. The relief requested by the Motion is necessary to avoid immediate and irreparable harm to the Debtor's estate, and good, adequate and sufficient cause has been shown to justify the granting of the relief requested herein, and the immediate entry of this Order.

vii.      Based upon the record before the Court, the use of Cash Collateral and the terms of the DIP Loan Documents have been negotiated at arm's length and in "good faith," as that term is used in section 364(e) of the Bankruptcy Code, and are in the best interests of the Debtor, its estate and creditors. The DIP Lender is extending financing to the Debtor in good faith and is entitled to the protections and benefits of the provisions of section 364(e) of the Bankruptcy Code. The Prepetition Lenders are permitting the use of their Cash Collateral by consent and in good faith.

4.      **_Debtor's Stipulations._** The Debtor has stipulated, acknowledged, admitted, represented, and confirmed the following as of the Petition Date (the "Debtor's Stipulations"):

i.      **_Prepetition Transaction Documents._** The Prepetition Lenders made loans and other financial accommodations to the Borrower that were guaranteed by the sole owner of the Debtor, Mr. Robert Goodrich (the "Guarantor"). The Prepetition Lenders have a pre-petition validly perfected first-priority secured claim against the Borrower and Guarantor under the Prepetition Transaction Documents, including without limitation the Hedging Obligations (as defined in the Prepetition Credit Agreement), in an amount owing, as of March 10, 2020, as follows: $28,696,366.40 of principal, plus accrued interest in the amount of $37,184.95, plus a $916,000.00 obligation arising from the early termination of an ISDA 2002 Master Agreement dated August 22, 2018, plus certain fees, interest, costs and expenses (the "Prepetition

Obligations").  The "Prepetition Transaction Documents" mean any and all documents relating to the Prepetition Credit Agreement as defined herein including but not limited to:

      a.      The Second Amended and Restated Credit Agreement dated September 27, 2018, as amended by a Limited Waiver and First Amendment to Second Amended and Restated Credit Agreement and Loan Documents dated November 15, 2019 (as so amended and as it may be further amended or supplemented from time to time, the "Prepetition Credit Agreement").

      b.      To secure the Prepetition Obligations, Debtor executed a Collateral Agreement which grants to Prepetition Agent a security interest in substantially all of the assets of the Debtor (the "Prepetition Collateral").

      c.      In connection with the Collateral Agreement, Debtor executed that certain Control Agreement dated July 16, 2013, as amended by that certain First Amendment to Control Agreement dated February 26, 2016 (collectively, the "Control Agreement"). The Prepetition Agent's security interest in the Prepetition Collateral was and is duly perfected by the filings of UCC-1s for the Debtor with the Secretary of State for the States of Michigan.  Included in the Prepetition Collateral are secured interests in all of the real property owned by the Debtor, perfected by validly recorded mortgages as described in the Motion.

      d.      Mr. Goodrich also guaranteed Debtor's payment of the Prepetition Obligations pursuant to a certain Continuing Unconditional Guaranty, as reaffirmed from time to time.

      e.      Debtor and Prepetition Agent also entered into that certain Environmental Indemnity Agreement  dated July 16, 2013, and that certain Environmental Indemnity Agreement  dated February 26, 2016 (collectively, the "Environmental Indemnity Agreements").

    ii.    ***Pre-petition Collateral***. The Prepetition Agent (on its behalf and on behalf of the Pre-petition Lenders) perfected its mortgages, security interests and liens in and on the Pre-petition Collateral.

    iii.    ***Pre-petition Transaction Documents.*** Each Pre-petition Transaction Document is a valid and binding agreement and the Debtor is obligated, as provided thereunder.

iv.    ***Pre-petition Obligations.*** The Pre-petition Obligations constitute legal, valid and binding obligations of the Borrower and the Guarantor, as applicable, enforceable in accordance with their terms; the Debtor has no objection, offset, defense or counterclaim of any kind or nature to the Pre-petition Obligations; and the Pre-petition Obligations, and any amounts previously paid to any Pre-petition Secured Party on account thereof or with respect thereto, are not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

v.    ***Pre-petition Liens.*** The Pre-petition Obligations are secured by the Pre-petition Liens and that each and every Pre-petition Lien is a valid, binding, perfected, enforceable, first-priority mortgage, lien and security interest granted to the Prepetition Lenders, which is not subject to avoidance, reduction, disallowance, impairment or subordination by the Debtor pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

vi.    ***Prepetition Lenders Are Oversecured.*** The aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Obligations.

5.    ***Interim Hearing & Interim Order.*** The Debtor sought authorization from this Court to borrow an amount not to exceed $3,650,240 under the DIP Loan Documents (the "Interim Amount"). If a final order approving the DIP Loan Documents (the "Final Order") is not entered within thirty (30) days of the entry of this Order, all such extensions of credit together with accrued interest shall be immediately due and payable. Notwithstanding any other provision of this Order or of the other DIP Loan Documents, the Debtor shall not, prior to entry of a Final Order or such other further orders as this Court may enter, incur any Post-petition Obligation in the aggregate principal amount exceeding the Interim Amount.

6.    ***Consensual Priming.*** The Prepetition Lenders have consented to the priming of the Pre-petition Liens by the Post-petition Liens (as defined below) and the Debtor's use of Cash Collateral on the terms and conditions set forth in the DIP Loan Documents and this Order. The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent or non-objection of such parties.

7.    ***Service of Motion.*** Notice of the relief sought by the Motion, and the hearing with respect thereto was served on March 11, 2020 (*see* Docket No. 142) electronically via this Court's electronic case management system ("ECF Service"), hand delivery, facsimile and/or delivery to by overnight delivery service to the following parties in interest: (i) the United States Trustee for the Western District of Michigan (the "U.S. Trustee"); (ii) those parties listed on the List of Creditors Holding Largest Twenty Unsecured Claims Against the Debtor, as identified in the Debtor's chapter 11 petition; (iii) counsel to the Prepetition Agent and the DIP Lender; (v) the Internal Revenue Service; (vi) all known secured creditors and (vii) any party that has filed a lien against any of the Debtor's assets (collectively, the "Interim Notice Parties"). Given the nature of the relief sought in the Motion, such notice constitutes sufficient and adequate notice of this Order pursuant to Bankruptcy Rules 2002, 4001(b), (c) and (d) and 9014 and section 102(1) of the Bankruptcy Code, as required by sections 363(b) and 364(d) of the Bankruptcy Code, and no further notice of the Motion or this Order is necessary or required.

8.    ***Motion Granted.*** The Motion is granted in its entirety, subject to the provisions hereof. Any objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits. This Order shall become effective immediately upon its entry.

9.      ***DIP Facility Authorization***. The Borrower is hereby authorized to enter into the DIP Facility, substantially in the form filed with the Court, with such modifications as permitted by this Order, and the other DIP Loan Documents; and is authorized to borrow funds, obtain letters of credit, incur debt, reimbursement obligations and other obligations, grant liens, make deposits, provide guaranties and indemnities and perform its obligations solely in accordance with the terms and conditions of the DIP Loan Documents.

i.      In furtherance of the foregoing and without further approval of this Court, the Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees that may be reasonably required or necessary for the Debtor's performance of its obligations under the DIP Facility, including, without limitation:

a.      the execution, delivery and performance of the DIP Loan Documents and any exhibits attached thereto;

b.      the execution, delivery and performance of one or more amendments to the DIP Loan Documents, in each case in such form as the Debtor and the DIP Lender may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Loan Documents that do not shorten the maturity of the extensions of credit thereunder or increase the commitments or the rate of interest). Notwithstanding any other provision hereof, without further approval of this Court, amendments to the DIP Loan Documents may be made at any time prior to the Final Hearing;

c.      the non-refundable payment to the DIP Lender of the fees referred to in the DIP Loan Documents (and in the separate letter agreements between them in connection

with the DIP Facility) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained by the DIP Lender as provided for in the DIP Loan Documents; and

        d.     the performance of all other acts required under or in connection with the DIP Loan Documents.

        ii.     All obligations owed to the DIP Lender under or in connection with the DIP Loan Documents, including, without limitation, all post-petition obligations, loans, advances, letters of credit and other indebtedness, obligations and amounts (contingent or otherwise) owing from time to time under or in connection with the DIP Loan Documents, and any and all other obligations at any time incurred by any of the Debtor to the DIP Lender, are defined and referred to herein as the "Post-petition Obligations".

10.     ***Post-petition Obligations Enforceable and Valid***. Upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Debtor, enforceable in accordance with their terms.

With respect to the Post-petition Obligations, no obligation, payment, transfer or grant of security under this Order or the other DIP Loan Documents shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.

11.     ***Cash, Cash Collateral & the Budget.***[2]

        i.     Subject to the terms and conditions set forth in this Order and the other DIP Loan Documents, the Debtor is authorized, pursuant to section 363(c)(2) of the Bankruptcy Code, to use Cash Collateral and the DIP Loan until the earlier to occur of: (i) the termination,

---

[2] United States quarterly fees shall be paid timely and nothing in the Budget shall alter the Debtor's obligation to pay quarterly fees in full and timely.

acceleration or maturity of the Post-petition Obligations as set forth in the DIP Loan Documents; or (ii) this Order or the Final Order ceases to be in full force and effect (each a "Cash Collateral Termination Event"). The Debtor's authority to use Cash Collateral shall automatically terminate on a Cash Collateral Termination Event without further order or relief from the Court.

        ii.      All of the Borrower's expenditures and cash flow shall be set forth in a budget prepared on a rolling 13-week basis (the "Budget"), as may be modified from time to time and at any time as required by and/or with the consent of the DIP Lender. The Budget shall set forth all expenditures by the Borrower and shall include various cash flow performance benchmarks set forth in the DIP Loan Documents.  The Borrower shall provide to the DIP Lender weekly variance report/reconciliation relating to the Budget for the preceding week and cumulative 13-week period in form and substance satisfactory to the DIP Lender. On a monthly basis, the Borrower shall provide to the DIP Lender a variance report/reconciliation relating to the Budget for the preceding month, starting with the first month after the first full month of the Budget.  The Borrower shall provide monthly updates to the Budget, subject to approval of the DIP Lender.  Prior to the repayment in full of the DIP Facility, all payments (inclusive of costs, expenses and fees) to be made by the Borrower shall be made pursuant to the Budget, subject to the rights of the Prepetition Lenders with respect to the Cash Collateral.

        iii.     The DIP Loan shall be available only after the Borrower uses, in accordance with the Budget, all of its cash that constitutes cash collateral (as defined in Bankruptcy Code §363(a)) (the "Available Cash").

      12.    ***Post-petition Liens***. As collateral securing the full satisfaction of the Post-petition Obligations by the Borrower, the DIP Lender is hereby granted, as of the date of this Order, and without the requirement of the execution or recordation of filings by the Debtor of mortgages,

security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens (collectively the "Post-petition Liens"), subject only to the Carve-out, (all property identified in this paragraph 12 being collectively referred to as the "DIP Collateral"):

     i.  ***First Lien on Unencumbered Property***. Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien upon all pre-petition and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired, to the extent such property is not subject to valid, perfected, non-avoidable and enforceable liens in existence as of the Petition Date or valid liens in existence as of the Petition Date that are perfected subsequent to such date to the extent permitted by section 546(b) of the Bankruptcy Code; including without limitation, all cash and cash collateral of the Debtor and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing (collectively, "Unencumbered Property"); provided that Unencumbered Property shall not include the Debtor's claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 or 551 of the Bankruptcy Code, including any proceeds of, or property and interests, unencumbered or otherwise, recovered in respect of any of the foregoing claims and causes of action (the "Excluded Property").

     ii.  ***Liens Junior to Perfected, Pre-petition Liens***. Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected

junior security interest in and lien upon all pre-petition and post-petition property of the Debtor (not including Excluded Property), whether now existing or hereafter acquired, that is subject to valid, perfected non-avoidable and enforceable liens, if any, in existence as of the Petition Date, which security interests and liens in favor of the DIP Lender are immediately junior to such valid, perfected and unavoidable liens, if any, including, without limitation, in all cash and cash collateral of the Debtor and any investment of such cash and cash collateral, inventory, any accounts receivable, other right to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing.

iii.     *Liens Senior to all Liens.* Pursuant to section 364(d) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected, first priority senior security interest in and lien, which shall be senior in priority to all pre-petition and post-petition security interests and liens, including the Pre-petition Liens but excluding the Permitted Liens, upon all pre-petition and post-petition property of the Debtor, whether existing on the Petition Date or thereafter acquired; including without limitation, all cash and cash collateral of the Debtor and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing.

iv.     *Liens Senior to Certain Other Liens.* The Post-petition Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (a) any lien

or security interest that is avoided and preserved for the benefit of the Debtor and their estates under section 551 of the Bankruptcy Code or (b) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtor other than with respect to any liens or security interests arising after the Petition Date and permitted under the DIP Loan Documents to be senior to the Post-petition Liens.

13. *Super-priority Claims*. In addition to the Post-petition Liens granted herein, all Post-petition Obligations shall constitute allowed, super-priority, administrative expense claims under section 503(b) of the Bankruptcy Code and under section 364(c)(1) of the Bankruptcy Code (the "Super-priority Claims") against the Debtor, having priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503, 506(c), 507, 546(c), 726, 1113 and 1114 of the Bankruptcy Code, or otherwise whether incurred in the Case or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto (a "Successor Case"). The Super-priority Claims shall be payable from, and have recourse to, all pre-petition and post-petition property of the Debtor and all proceeds thereof.

14. *Fees & Expenses*. The Debtor is authorized, directed, and shall pay (and the automatic stay imposed by section 362 of the Bankruptcy Code is hereby lifted to the extent necessary) fees and expenses that may be required under the DIP Loan Documents, as such fees and expenses become due, including, without limitation, any agent fees, commitment fees, letter of credit fees and underwriting fees and reasonable attorneys', financial advisors' and

accountants' fees[3] and disbursements and fees in respect of internal auditors, all as provided for in and subject to the DIP Loan Documents. None of such reasonable attorneys', financial advisers', accountants' and internal auditors' fees and disbursements shall be subject to the approval of this Court or the U.S. Trustee guidelines, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. In addition, the Debtor is hereby authorized and directed to indemnify the DIP Lender and the Prepetition Lenders, exclusively in their capacity as such, against any liability arising in connection with the DIP Loan Documents to the extent provided in and subject to the DIP Loan Documents. All such fees, expenses and indemnities of the DIP Lender shall constitute Post-petition Obligations and shall be secured by the Post-petition Liens and afforded all of the priorities and protections afforded to the Post-petition Obligations under this Order and the other DIP Loan Documents.

15.    ***Adequate Protection***. The Prepetition Lenders are entitled, under sections 363(e) and 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of their interest in the Pre-petition Collateral for and equal in amount to the aggregate diminution in the value of the Prepetition Lenders' interest in the Pre-petition Collateral by reason of: (i) the imposition of the automatic stay under section 362 of the Bankruptcy Code; (ii) the priming of the Pre-petition Liens; (iii) the use of the Prepetition Lenders' Cash Collateral; and (iv) the use, sale or lease of Pre-petition Collateral pursuant to section 363(a) of the Bankruptcy Code (the "Adequate Protection Obligations"). Subject in all respects to (Y) the Post-petition Obligations, Post-petition Liens and the rights of the DIP Lender under this Order and the DIP Loan Documents (which shall at all times rank senior and prior to the Pre-petition Obligations, Pre-petition Liens,

---

[3] The Debtor agrees to provide a copy of any invoice from DIP Lender for professional fees received to the United States Trustee upon request.

Adequate Protection Liens (as defined below) and the Adequate Protection Claims (as defined below)); and (Z) the Carve-Out; the Prepetition Lenders are hereby provided with the following forms of adequate protection (which the DIP Lender and the Prepetition Lenders acknowledge is acceptable):

    i.    Additional and replacement liens on all existing and all after-acquired, created or arising property of the estate to secure the Adequate Protection Obligations (the "Adequate Protection Liens"). Except as provided in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any other lien on Debtor's existing and after-acquired, created or arising property of the estate by any order subsequently entered in the Case or any Successor Case.

    ii.    Allowed, super-priority claims under section 507(b) of the Bankruptcy Code against the Debtor's estate in the amount of the Adequate Protection Obligations (the "Adequate Protection Claims"). Except as provided in this Order, the Adequate Protection Claims shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, whether incurred in the Case or any Successor Case.[4]

---

[4] The DIP Lender reserves the right to elect, in its sole discretion, to require the Debtor in the Final Order to, on a monthly basis thereafter, promptly pay in cash, as additional adequate protection: (a) all accrued, but unpaid reasonable fees and expenses of the Prepetition Lenders, including but not limited to all reasonable fees and expenses of professionals engaged for which an invoice was delivered to the Debtor; and (b) all principal payments owing and accrued but unpaid interest on the Pre-petition Obligations at the rate specified in the Pre-petition Transaction Documents and all other reasonable fees, expenses, costs and charges provided under the Pre-petition Credit Agreement or any other Pre-petition Transaction Document for which an invoice was delivered to the Debtor, in each case regardless of whether such amounts accrued prior to the Petition Date, and all without further motion, fee application or order of the Court; and, in addition to the fees, costs, charges and expenses authorized under the Pre-Petition Transaction Documents, pay in accordance with the procedures set forth in the following sentences, as allowed post-petition administrative expenses entitled to the priority and security afforded to the Adequate

       iii.     In addition, the Debtor shall satisfy the following milestones, which are also obligations under the DIP Loan Documents (the "Milestones"):

       a.     Debtor has filed applications of Novo Advisors, as financial advisor to the Borrower, and Stout Risius Ross Advisors, LLC, as investment banker for the Borrower. Debtor shall obtain orders approving such applications in form acceptable to the DIP Lender by March 18, 2020;[5]

       b.     Obtain approval of interim Cash Collateral and interim DIP Order(s) acceptable to DIP Lender, by the Bankruptcy Court on a final, non-appealable basis by March 13, 2020;

       c.     Bidding Procedures Motion acceptable to DIP Lender filed by March 18, 2020;

       d.     Order Approving Bidding Procedures Motion, in a form acceptable to DIP Lender, for a sale of substantially all of the Borrower's assets entered by March 30, 2020 requiring a sale closing by May 22, 2020;

       e.     On or by March 24, 2020, the Borrower shall have completed a confidential information memorandum to be sent to potential buyers;

       f.     On or by March 24, 2020, the Borrower shall have established and populated a data room with company and financial information regarding the operations of the Borrower and its assets and operations;

       g.     By March 25, 2020, the Borrower, with the assistance of its investment banker, shall have completed a desktop appraisal of the value of the Borrower's interest in the Gibsonton Theater joint venture;

       h.     By March 25, 2020, the Borrower, with the assistance of its financial advisor, shall have completed an analysis of the Borrower's operations and provided any recommendations regarding any aspect of the continuation of any of the Borrower's operations;

       i.     By April 8, 2020, the Borrower, with the assistance of its investment banker, shall provide to DIP Lender information and assessments regarding any indications of interest from any potentially interested buyers of the Borrower's assets, and shall

---

Protection Claim, all of the Prepetition Lenders' reasonable (in all respects) attorneys' and other professionals' fees and reimbursable expenses arising from or related to: (w) this Order, including without limitation, the negotiating, closing, documenting and obtaining of Court approval thereof; (x) all proceedings in connection with the interpretation, amendment, modification, enforcement, enforceability, validity or implementation of the Pre-Petition Transaction Documents or this Order; (y) all other matters and proceedings arising in or related to the Debtor's bankruptcy case; and (z) all reasonable expenses, costs and charges in any way or respect arising in connection with the foregoing.

[5] It shall also be an Event of Default under the DIP Facility if the Debtor terminates either Novo Advisors as financial advisors or Stout Risius Ross Advisors, LLC as investment bankers.

offer guidance, if any, based on indications received by such date;

            j.      Approval of Final Order acceptable to DIP Lender by April 15, 2020;

            k.      By May 4, 2020, Debtor shall have received one or more Qualified Bids, to be defined in the Bidding Procedures Order *inter alia* as being acceptable to the DIP Lender;

            l.      By May 6, 2020, Debtor shall conduct an auction pursuant to the Bidding Procedures Order;

            m.      By May 8, 2020, Debtor shall obtain a Sale Approval Order, to be defined in the Bidding Procedures Order, approving a sale of the Borrower's assets pursuant to one or more Successful Bidder(s); and

            n.      By May 22, 2020, the Borrower shall have closed the sale(s) of the Borrower's assets pursuant to the Sale Approval Order.

            iv.      The consent of the Prepetition Lenders to the use of the Pre-petition Collateral by the Debtor shall terminate upon: (a) the Debtor's failure to make any payment specified in this paragraph to or on behalf of the Prepetition Lenders; (b) the occurrence of an Event of Default (as defined by the DIP Loan Documents); (c) the occurrence of a Termination Date; or (d) the failure to satisfy a Milestone.

            v.      The Prepetition Lenders and their advisors shall be given reasonable access for purposes of monitoring the business of the Debtor and the value of the Pre-petition Collateral; and the Debtor shall provide the Prepetition Lenders with any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Lender.

            vi.      Notwithstanding anything herein to the contrary, this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of the Prepetition Lenders to seek modification of the grant of adequate protection provided hereby so as to provide different or additional adequate protection at any time, and nothing herein shall

affect the rights of any other party or entity to seek or oppose such modification of the grant of the adequate protection provided hereby. Nothing herein shall impair the rights of any party to challenge or otherwise modify the adequate protection provided herein to the Prepetition Lenders; provided, that if any additional adequate protection claims, liens or other rights are awarded at any time, such claims, liens and/or other rights shall be at all times junior in all respects to the claims and liens granted to or for the benefit of the DIP Lender and the Prepetition Lenders and shall not affect the priority, validity, binding nature, enforceability or perfection of any of such claims and liens granted to or for the benefit of the DIP Lender and the Prepetition Lenders; provided, further, that the foregoing is without prejudice to the right of the Debtor or any other party in interest, including the DIP Lender and the Prepetition Lenders, to challenge any such request.

16.    ***Perfection of Post-petition Liens & Adequate Protection Liens.***

i.    All liens granted or authorized pursuant to this Order, including the Post-petition Liens and the Adequate Protection Liens, to or for the benefit of the DIP Lender or the Prepetition Lenders shall pursuant to this Order be, and hereby are, valid, enforceable and perfected, effective as of the Petition Date, and (notwithstanding any provisions of any agreement, instrument, document, the Uniform Commercial Code or any other relevant law or regulation of any jurisdiction) no further notice, filing or other act shall be required to effect such perfection, and all liens that may be created upon any deposit accounts or securities accounts shall, pursuant to this Order be, and they hereby are, deemed to confer "control" for purposes of sections 8-106, 9-104 and 9-106 of the Uniform Commercial Code as in effect as of the date hereof in favor of the DIP Lender; provided, that if the DIP Lender or the Prepetition Agent shall, in their sole discretion, choose to require the execution of and/or file (as applicable) such

mortgages, financing statements, notices of liens and other similar instruments and documents, all such mortgages, financing statements, notices of liens or other similar instruments and documents shall be deemed to have been executed, filed and/or recorded *nunc pro tunc* at the time and on the date of the Petition Date. Each and every federal, state and local government agency or department is hereby directed to accept the entry by this Court of this Order as evidence of the validity, enforceability and perfection on the Petition Date of the liens granted or authorized pursuant to this Order to or for the benefit of the DIP Lender or the Prepetition Lenders.

           ii.      The Pre-petition Liens, the Post-petition Liens and the Adequate Protection Liens shall not be: (a) subject to any lien that is avoided and preserved for the benefit of the Debtor's estates under section 551 of the Bankruptcy Code, the proceeds of such avoided liens being Pre-petition Collateral securing the Pre-petition Obligations or DIP Collateral (the Pre-petition Collateral and the DIP Collateral, collectively, the "Collateral") securing the Post-petition Obligations, as applicable; or (b) subordinated to or made *pari passu* with any other lien under section 364(d) of the Bankruptcy Code or otherwise. No claim or lien having a priority superior to or *pari passu* with those granted by this Order with respect to the Post-petition Obligations shall be granted or allowed until the indefeasible payment in full in cash and satisfaction of the Post-petition Obligations in the manner provided in the DIP Loan Documents.

           iii.      Effective upon entry of the Final Order, except to the extent of the Carve Out, no expenses of administration of the Case or any Successor Case shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Lender or the Prepetition Agent, as

the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender or the Prepetition Lenders.

iv.    Effective upon entry of the Final Order, the Debtor hereby waives any right to assert that the Prepetition Liens do not extend to proceeds, products, offspring, or profits acquired by the Debtor after the Petition Date under "the equities of the case" doctrine or otherwise pursuant to Section 552 of the Bankruptcy Code.

17.    *Carve-out.*

i.    All liens and claims granted pursuant to this Order, including the Post-petition Liens, the Super-priority Claims, the Adequate Protection Liens and the Adequate Protection Claims shall be subordinate to the following expenses:

a.    fees of the Clerk of the Bankruptcy Court and fees of the United States Trustee pursuant to 28 U.S.C. § 1930(a);

b.    prior to delivery of a Carve-out Trigger Notice, fees and expenses of professionals retained by the Debtor, including investment bankers, or any Committee. and

c.    after delivery of a Carve-out Trigger Notice, $100,000 of fees and expenses of professionals including investment bankers (but not any "success fee" or "transaction fee" owed to such professional) retained by the Debtor, any chapter 11 trustee appointed in the Chapter 11 Case and the Committee that are allowed by this Court ((a), (b) and (c) together, the "Carve-out").

ii.    The term Carve-out Trigger Notice shall mean a written notice, delivered by the DIP Lender to bankruptcy counsel for the Debtor and counsel for any Committee, stating that an Event of Default (as defined in the DIP Loan Documents) has occurred and that the Post-trigger Carve-out Account is to be funded (as defined and as provided below).

iii.    Upon delivery of a Carve-out Trigger Notice and to satisfy the Carve-out, the Borrower shall fund a segregated account in an aggregate amount of the amount specified in section 17(i)(c) above, plus the amount of unpaid Budgeted professional fees and expenses incurred by the Debtor or any Committee prior to the date of the Carve-out Trigger Notice (the "Post-trigger Carve-out Account"), to be used to satisfy the Post-Default Carve-Out as defined in the DIP Loan Documents, and any remaining balance shall then pay first any remaining Post-petition Obligation and then any remaining Pre-petition Obligation.

iv.    The Carve-out and amounts in the Post-Default Carve-out Account shall not include, apply to, or be available for any fees or expenses incurred by any party, including the Debtor, a Committee, or any of their professionals, to: (a) object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, amount or enforceability of: the Pre-petition Obligations, the Pre-petition Liens, the Post-petition Obligations or the Post-petition Liens (except to the extent of up to $7,500 of fees and expenses incurred by a Committee to investigate the validity, perfection, priority, extent, amount or enforceability of: the Pre-petition Obligations, the Pre-petition Liens, the Post-petition Obligations or the Post-petition Liens); or (b) assert any claims or causes of action against the Prepetition Lender, the Prepetition Agent or the DIP Lender, or their respective advisors, agents and sub-agents, including discovery proceedings in anticipation thereof, or in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation against the Prepetition Lender, the Prepetition Agent or the DIP Lender.

v.    Nothing herein shall constitute a waiver by the Prepetition Lenders or the DIP Lender of their rights to object to the fees and expenses of any professional retained by the Debtor or a Committee, all such rights being fully reserved.

18.    *Limitation on Use of Collateral and DIP Facility Proceeds*. Notwithstanding anything herein to the contrary, amounts loaned or advanced under, or in connection with, the DIP Facility, any and all proceeds of collateral and all existing and future cash collateral may not be used, directly or indirectly, by any Debtor, Committee, or any other person or entity to: (a) object to, contest in any manner, or raise any defenses to, the validity, perfection, priority, extent, amount or enforceability of the DIP Facility, any DIP Loan Document, any Post-petition Obligation, any Post-petition Lien or Super-priority Claim; (b) assert any claims or causes of action against the DIP Lender or any Prepetition Lender or their respective advisors, agents and sub-agents, including discovery in anticipation thereof, or in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation involving the DIP Lender or any Prepetition Lender; (c) prevent, hinder or otherwise delay the Prepetition Lenders' or the DIP Lender's assertion, enforcement or realization on Pre-petition Collateral or DIP Collateral, as applicable, in accordance with the DIP Loan Documents, the Pre-petition Transaction Documents or this Order; (d) seek to modify any of the rights granted to the DIP Lender or the Prepetition Lenders hereunder, under the DIP Loan Documents or the Pre-petition Transaction Documents, in each of the foregoing case without such parties' prior written consent; (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (1) approved by an Order of this Court and (2) in accordance with the Budget; (f) seek authorization, or support any other person or entity seeking authorization, to use any Cash Collateral without the consent of the DIP Lender; or (g) obtain a lien senior to, or on a parity with, the liens of the DIP Lender in any DIP Collateral or any portion thereof.

19.    *Perfection Maintenance.* To the extent CIBC Bank USA, in its role as Prepetition Agent under the Pre-petition Transaction Documents is the secured party or is listed as loss

payee or additional insured under any Pre-petition Transaction Document, CIBC Bank USA as DIP Lender is also deemed to be the secured party or loss payee in that capacity and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lender in accordance with the DIP Loan Documents and second, subsequent to indefeasible payment in full of all DIP Obligations in cash, for the benefit of the Prepetition Lenders under the Pre-petition Transaction Documents.

20. ***Preservation of Rights***.

i.       Notwithstanding anything herein to the contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair: (a) any of the rights of any of the DIP Lender or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, any right of the DIP Lender to: (1) request modification of the automatic stay of section 362 of the Bankruptcy Code; (2) request dismissal of any of the Case, conversion of any of the Case to case under chapter 7 of the Bankruptcy Code, or appointment of a chapter 11 trustee or examiner (including with expanded powers); or (3) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans; or (b) any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Lender or the Pre-petition Parties.

ii.       The Post-petition Obligations, the Pre-petition Obligations and the Adequate Protection Obligations, and the claims and liens granted to or for the benefit of the DIP Lender and the Prepetition Lenders pursuant to this Order and the other DIP Loan Documents, are not subject to any setoff or reduction of any kind, including, without limitation, under section 502(d) of the Bankruptcy Code, and shall not be discharged by the entry of an order: (a) confirming a chapter 11 plan in the Case (and, pursuant to section 1141(d)(4) of the Bankruptcy

Code, the Debtor hereby waives such discharge); or (b) converting the Case to a case under chapter 7 of the Bankruptcy Code. Under no circumstances shall any chapter 11 plan in this Case be confirmed or become effective unless such plan provides that the Post-petition Obligations shall be paid in full in cash and satisfied in the manner provided in the DIP Loan Documents on or before the effective date of such plan.

iii.    Based upon the findings set forth in this Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the commitments to extend DIP Loan contemplated by this Order, in the event that any or all of the provisions of this Order or any other DIP Loan Documents, including the Final Order, are hereafter modified, amended or vacated by a subsequent order of this or any other Court, no such modification, amendment or vacation shall affect the validity, enforceability or priority of any lien or claim authorized or created hereby or thereby or any Post-petition Obligations incurred hereunder or thereunder. Notwithstanding any such modification, amendment or vacation, any Post-petition Obligations incurred and any claim granted to the DIP Lender and the Prepetition Lenders hereunder or under the other DIP Loan Documents, including the Final Order, arising prior to the effective date of such modification, amendment or vacation shall be governed in all respects by the original provisions of this Order and the other DIP Loan Documents, including the Final Order, and the DIP Lender and the Prepetition Lenders shall be entitled to all of the rights, remedies, privileges and benefits, including the liens and priorities granted herein and therein, with respect to any such Post-petition Obligations.

iv.    The validity, enforceability, priority or amount of any of the claims and liens granted to or for the benefit of the DIP Lender under this Order or any other DIP Loan Documents with respect to the Post-petition Obligations shall not be affected by any finding or

order of this Court or any other court regarding any Pre-petition Secured Party or Pre-petition Liens, including, without limitation, any order of this Court or any other Court invalidating any Pre-petition Obligation or Pre-petition Liens.

       v.     To the extent that any Post-petition Obligations remain unpaid, any amounts disgorged by the Prepetition Lenders in respect of any of the Pre-petition Obligations (whether such amounts were received by the Prepetition Lenders prior or subsequent to the Petition Date) shall upon such disgorgement be immediately delivered by the Debtor to the DIP Lender to be applied to repay the Post-petition Obligations in accordance with the terms of the DIP Loan Documents.

21.    ***Release.***

       i.     Debtor hereby forever releases, waives and discharges each Prepetition Lender and the Prepetition Agent (whether in its pre-petition or post-petition capacity), together with its respective officers, directors, employees, agents, sub-agents, attorneys, professionals, affiliates, subsidiaries, assigns and/or successors (collectively, the "Released Parties"), from any and all claims and causes of action arising out of, based upon or related to, in whole or in part, any: (a) Pre-petition Transaction Document; (b) aspect of the Pre-petition relationship between a Debtor and any or all of the Released Parties, or (c) other acts or omissions by any or all of the Released Parties including, without limitation, any claims or defenses as to the extent, validity, priority or perfection of the Pre-petition Liens or Pre-petition Obligations, "lender liability" claims and causes of action, any actions, claims or defenses under chapter 5 of the Bankruptcy Code or any other claims and causes of action and any resulting subordination or recharacterization of any payments made to any Prepetition Lender pursuant to this Order (all such claims, defenses and other actions described in this paragraph are collectively defined as the

"Claims and Defenses"). Nothing contained in this subparagraph shall affect the rights of any Committee or any other party in interest to undertake any action with respect to, including, without limitation, any investigation or prosecution of, Claims and Defenses that is permitted in the other subparagraphs of this paragraph, subject to any other applicable terms of this Order.

      ii.    The Debtor's Stipulations shall be binding upon the Debtor in all circumstances. The Debtor's Stipulations shall be binding upon all other parties in interest, including, without limitation, any Committee, unless such Committee files a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate or otherwise challenge the Debtor's Admissions, Pre-petition Liens or the Pre-petition Obligations; provided, that any such complaint must be filed in this Court within forty-five (45) days after the formation of any such Committee (the "Challenge Deadline"). If no such complaint is filed before the Challenge Deadline, then any and all Claims and Defenses against any of the Released Parties shall be, without further notice or order of the Court, forever relinquished, released and waived as to such Committee and all other persons and entities. If such a complaint is timely filed before the Challenge Deadline, any and all Claims and Defenses against any of the Released Parties shall be immediately and without further action forever relinquished, released and waived as to such Committee and every other person or entity, except with respect to Claims and Defenses that are expressly asserted in such complaint.

      iii.    If no such complaint as to any Pre-petition Lien, the Pre-petition Obligation, the Pre-petition Transaction Documents or the Released Parties is filed before the Challenge Deadline, then, without the requirement or need to file any proof of claim with respect thereto: (a) the Pre-petition Obligations shall constitute allowed, fully secured claims for all purposes in the Case and any Successor Case; (b) the Pre-petition Liens shall be deemed legal,

valid, binding, enforceable, perfected, not subject to subordination (except for the subordination thereof to the Post-petition Liens and as otherwise specified in this Order and the DIP Loan Documents, as applicable) or avoidance for all purposes in the Case and any Successor Case; (c) the release of the Claims and Defenses shall be binding on all parties in interest in the Case and any Successor Case, and (d) the Pre-petition Obligations, the Pre-petition Liens, releases of the Claims and Defenses against the Released Parties, and prior payments on account of or with respect to the Pre-petition Obligations, respectively, not subject to any such complaint shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this Order shall confer or deny standing upon the Committee or any other person or entity to bring, assert, commence, continue, prosecute or litigate the Claims and Defenses against any Released Party.

22.    ***Survival of Certain Rights***. Notwithstanding anything herein or in any other DIP Loan Document, upon the occurrence of the DIP Termination Date (as defined in the DIP Loan Documents), all of the rights, remedies, benefits and protections provided: (i) to the DIP Lender under this Order and the other DIP Loan Documents; and (ii) to the Prepetition Lenders under this Order and the Pre-petition Transaction Documents, shall survive such Termination Date. Upon such Termination Date, the principal of and all accrued interest and fees and all other Post-petition Obligations shall be immediately due and payable and the DIP Lender shall have all other rights and remedies provided in this Order, the other DIP Loan Documents and applicable law.

23.    ***Rights Upon Case Dismissal***. Until all obligations and indebtedness owing to the DIP Lender shall have been paid in full in cash and satisfied in the manner provided in the DIP

Loan Documents and this Order, no Debtor shall seek an order dismissing the Case. If an order dismissing the Case under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349(b) of the Bankruptcy Code) that: (i) the claims and liens granted pursuant to this Order to or for the benefit of the DIP Lender shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations in respect thereof shall have been paid in full in cash and satisfied in the manner provided in the DIP Loan Documents (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the claims and liens granted pursuant to this Order to or for the benefit of the Prepetition Lenders shall continue in full force and effect and shall maintain their priorities as provided in this Order (and that such claims and liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (iii) that prior to dismissal, the applicable Debtor shall deliver to the DIP Lender and record, at the Debtor's cost, financing statements, mortgages and other documentation evidencing perfected liens in the DIP Collateral; and (iv) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing such claims and liens.

24.     ***Events of Default***.

i.     The automatic stay provisions of section 362 of the Bankruptcy Code are hereby vacated and modified to the extent necessary to permit the DIP Lender to exercise, upon the occurrence of any Event of Default (as defined in the DIP Loan Documents), all rights and remedies provided for in the DIP Loan Documents, and to take any or all of the following actions without further order of or application to this Court: (a) terminate the Debtor's use of Cash Collateral and cease to make any loans or advances to the Debtor; (b) declare all Post-petition Obligations to be immediately due and payable; (c) terminate any unfunded commitments under

the proposed DIP Facility; (d) set off and apply immediately any and all amounts in accounts maintained by the Debtor with any DIP Lender and the Prepetition Lenders against the Post-petition Obligations, and otherwise enforce rights against the DIP Collateral in the possession of any of the DIP Lender and the Prepetition Lenders for application towards the Post-petition Obligations; and (e) take any other actions or exercise any other rights or remedies permitted under this Order, the other DIP Loan Documents or applicable law to effect the repayment and satisfaction of the Post-petition Obligations; provided, that the DIP Lender or an applicable DIP Lender shall provide five (5) business days written notice (by facsimile, telecopy, electronic mail or otherwise) to the U.S. Trustee, counsel to the Debtor and counsel to any Committee prior to exercising any enforcement rights or remedies in respect of the DIP Collateral (other than the rights described in clauses (a), (b) and (c) above (to the extent they might be deemed remedies in respect of the DIP Collateral) and other than with respect to freezing any deposit accounts or securities accounts); provided further, that the Borrower shall have the right to seek continuation of the automatic stay during such five (5) days period solely on the basis that no Event of Default has occurred.

ii.     No holder of a lien primed by this Order or granted by the Debtor as adequate protection shall be entitled to object on the basis of the existence of any such lien to the exercise by the DIP Lender of its rights and remedies under the DIP Loan Documents or under applicable law to effect satisfaction of the Post-petition Obligations or to receive any amounts or remittances due hereunder or under the other DIP Loan Documents. The DIP Lender shall be entitled to apply the payments or proceeds of the DIP Collateral in accordance with the provisions of this Order and the other DIP Loan Documents, and except to the extent specifically

provided herein, the DIP Lender shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or otherwise.

    iii.  The rights and remedies of the DIP Lender specified herein are cumulative and not exclusive of any rights or remedies that the DIP Lender may have under the other DIP Loan Documents or otherwise. The failure or delay by the (a) DIP Lender to seek relief or otherwise exercise its rights and remedies under this Order or any other DIP Loan Documents or (b) Prepetition Lenders to exercise its rights and remedies under this Order shall not constitute a waiver of any of the rights of the DIP Lender or Prepetition Lenders hereunder, thereunder or otherwise, and any single or partial exercise of such rights and remedies against any party or DIP Collateral shall not be construed to limit any further exercise of such rights and remedies against any or all of the other party and/or DIP Collateral.

    iv.  ***Notice***. The Debtor shall, on or before March 16, 2020, serve by ECF Service, or by United States mail, first class postage prepaid, copies of the Motion, this Order and a notice of the Final Hearing (the "Final Hearing Notice") to be held on April 15, 2020, at 10:00 a.m. to consider entry of the Final Order on all parties who are required to be served under Fed. R. Bankr. P. 4001(d). Copies of the Motion, this Order and the Final Hearing Notice also shall be served upon all persons requesting service of papers pursuant to Bankruptcy Rule 2002 by ECF Service or by United States mail, first class postage prepaid within one business day following the receipt of such request. The Final Hearing Notice shall state that any party in interest objecting to the entry of the Final Order shall file written objections with the Court no later than 5:00 p.m. on April 3, 2020, which objections shall be served so that the same are received on or before such date and time by: (a) Keller & Almassian, PLC, 230 E. Fulton St., Grand Rapids, MI 49503, Todd Almassian, Esq., proposed counsel to the Debtor (b) Varnum

LLP, 160 W. Fort St., 5th Floor, Detroit, MI 48226, Brendan G. Best, Esq., counsel to the Prepetition Agent; (c) Jonathan S. Green, Esq., counsel to Prepetition Lender Independent Bank, Miller Canfield, 150 West Jefferson, Suite 2500, Detroit, MI 48226; (d) Timothy Hillegonds, Esq., counsel to the Prepetition Lender Macatawa Bank, Warner Norcross + Judd LLP, 1500 Warner Building, 150 Ottawa Avenue NW, Grand Rapids, MI 49503; and (e) the Office of the United States Trustee, 125 Ottawa NW, Ste. 200R, Grand Rapids, MI 49503.

25. ***Binding Effect; Successors and Assigns***. This Order is hereby deemed effective immediately pursuant to Federal Bankruptcy Rules of Procedure §6004(h). The provisions of this Order shall be binding upon and inure to the benefit of the DIP Lender, each Prepetition Lender and the Debtor and their respective successors and assigns, including any chapter 7 trustee or other trustee or fiduciary hereafter appointed as a legal representative of the Debtor or with respect to the property of the estates of the Debtor in a Successor Case.

26. ***Conflict***. In the event that any provision of this Order conflicts with any term of the other DIP Loan Documents, this Order shall govern.

<u>**END OF ORDER**</u>

**IT IS SO ORDERED.**



**Dated March 13, 2020**

James W. Boyd
United States Bankruptcy Judge