UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 20-00759-SWD |
| GOODRICH QUALITY THEATERS, INC., | § § § § | CHAPTER 11 |
| | § § | HON. SCOTT W. DALES |
| *Debtor.* | § | |

**GIBSONTON THEATER, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN ORDER TO TERMINATE MANAGEMENT AGREEMENT WITH DEBTOR OR IN THE ALTERNATIVE FOR ORDER COMPELLING ASSUMPTION OR REJECTION OF MANAGEMENT AGREEMENT**

**NOTICE AND OPPORTUNITY TO OBJECT**

**NO HEARING WILL BE CONDUCTED HEREON UNLESS A WRITTEN RESPONSE IS FILED WITH THE CLERK OF THE UNITED STATES BANKRUPTCY COURT AT 1 DIVISION AVE. N, ROOM 200, GRAND RAPIDS, MI 49503 BEFORE CLOSE OF BUSINESS ON APRIL 3, 2020, WHICH IS AT LEAST 14 DAYS FROM THE DATE OF SERVICE HEREOF.**

**ANY RESPONSE SHALL BE IN WRITING AND FILED WITH THE CLERK, AND A COPY SHALL BE SERVED UPON COUNSEL FOR THE MOVING PARTY PRIOR TO THE DATE AND TIME SET FORTH HEREIN. IF A RESPONSE IS FILED A HEARING WILL BE HELD WITH NOTICE.**

**IF NO HEARING ON SUCH NOTICE OR MOTION IS TIMELY REQUESTED, THE RELIEF REQUESTED SHALL BE DEEMED TO BE UNOPPOSED, AND THE COURT MAY ENTER AN ORDER GRANTING THE RELIEF SOUGHT OR THE NOTICED ACTION MAY BE TAKEN.**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Gibsonton Theater, LLC ("*Gibsonton Theater*"), a party-in-interest herein moves this Court for relief from the automatic stay to permit Gibsonton Theater to terminate that certain Management Agreement dated November 18, 2016 between Gibsonton Theater as Owner and

Goodrich Quality Theaters, Inc. ("*Debtor*") as Manager (the "*Management Agreement*"). In support of the Motion, Gibsonton Theater states as follows:

I.      **Preliminary Statement and Background**

1.      Gibsonton Theater is a Delaware limited liability company. Gibsonton Theater is owned 50% by AP Gibsonton, LLC, a Texas limited liability company and 50% by the Debtor. The limited liability company Managers of Gibsonton Theater are Jay Anthony and Robert Goodrich. Mr. Goodrich is the President and sole owner of the Debtor. AP Gibsonton, LLC ("*AP Gibsonton*") is owned by parties affiliated with Mr. Anthony..

2.      The Operating Agreement of Gibsonton Theater empower the Managers to, among other things, "institute, prosecute . . . judicial or administrative proceedings brought on or in behalf of. . . the Company. . .". See, Operating Agreement, Section 3.5(c)(xv). Jay Anthony is the only disinterested Manager with respect to the continued operation of the Gibsonton Theater pursuant to the Management Agreement. Mr. Goodrich's position as the owner of the Debtor, which is also the management company under the Management Agreement, has an obvious conflict with respect to Gibsonton Theater's continued operation under the Management Agreement. Mr. Goodrich's conflict is even more pronounced since he is also a guarantor of the approximately $30 million dollar debt owed to the Debtor's secured lenders. Accordingly, Mr. Anthony has elected to exercise his authority as the only disinterested Manager to act to protect Gibsonton Theater's interest in this bankruptcy case with respect to the Management Agreement.

3.      There are numerous deficiencies with respect to the Debtor's continued performance under the Management Agreement which each constitute cause to terminate the Management Agreement in accordance with its terms. While in some cases, a Debtor might be entitled to some leeway with respect to continued performance under an executory contract, this case is not a reorganization of the Debtor. Rather, this is clearly a liquidation of the Debtor under

terms being dictated by the Debtor's secured lenders. Accordingly, in order to protect Gibsonton Theater's continued operational integrity, Gibsonton Theater requests that the Court lift the automatic stay pursuant to Section 362(a)(1), for cause, to permit Gibsonton Theater to terminate the Management Agreement in accordance with its terms.

      4.      The replacement of the manager of the theater operation at Gibsonton Theater will require significant lead time to address point of sale issues, movie access rights, inventory sourcing, and a myriad of other items that will need to be transitioned to a new operator. If relief is not granted to Gibsonton Theater to terminate the Debtor as the manager promptly, Gibsonton Theater could be left with the prospect of a failed sale process and no manager for a dark theater. This would cause substantial disruption to Gibsonton Theater's normal operations, detrimentally impact its customers and damage its reputation in the community. While the current temporary closure due to COVID-19 is noted, the ability to efficiently reopen is AP Gibsonton's concern. If this temporary closure is not resolved quickly, Debtor's ability, and its desire, to reopen and perform under the Management Agreement is very questionable. Also, this temporary closure could allow a new management company engaged by Gibsonton Theater time to put its management processes in place and be ready to serve our customers when the theater reopens. Accordingly, cause exists for the Court to lift the automatic stay to permit Gibsonton Theater to issue a notice of termination and begin the process of finding a replacement operator.

## II.    Jurisdiction and Venue

      5.      The Court has jurisdiction over the subject matter of the Motion pursuant to 28 U.S.C. §1334. This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

### III.     Facts

6. The Management Agreement requires the Debtor, in its capacity as manager, to, among other things, maintain the premises in good condition (Management Agreement Section 3.1), employ and pay onsite personnel (Management Agreement Section 3.2), pay the operating expenses arising in the ordinary course of business of the theater (Management Agreement Section 3.4). A true and correct copy of the Management Agreement is attached hereto and incorporated herein by reference.

7. The Debtor has and is failing to adequately perform these material obligations. The Debtor has failed to pay the salaried theater managers their agreed upon performance bonuses on at least two occasions, and on two consecutive occasions was late in making its regularly scheduled payroll, all of which has contributed to very low morale among the employees who deal with the theater patrons on a daily basis.

8. The Debtor's failure to keep current with its payments to its movie distributors has caused Gibsonton Theater to miss the opening weekend of the movie "Emma", a major release from Universal. Other Universal releases have been held up including "Bloodshot". As the Debtor's filings seeking authority to pay the distributors as critical vendors acknowledges, timely payment of the distributors puts the whole operation of the theater in jeopardy.

9. In addition to the issues with the movie distributors, the Debtor has slow paid or not paid critical theater vendors, including its vendor for concession supplies who has stopped selling to the Debtor completely, thus requiring the theater to purchase supplies locally on an ad hoc basis and its soda supplier which is delivering only on a COD basis, despite the fact that Gibsonton Theater, unlike many of the Debtor's owned and operated locations, is profitable. Other vendor relationships that are being disrupted or placed on COD status include internet ticketing, box office and concession menu displays, and bulk oil delivery and collection. Each of these issues

directly impact the patrons' movie going experience and therefore impact the theater's revenues in what is already a clearly challenged environment due to issues beyond the control of either the Debtor or Gibsonton Theater. Operating under a strict cash collateral budget, the Debtor is simply unable to meet its day to day responsibilities under the Management Agreement and its failures are causing great harm to the Gibsonton Theater.

### IV.     Relief Requested

*a. Gibsonton Theater Requests Relief from Automatic Stay*

10.     Section 362(d)(1) of the Bankruptcy Code provides, in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the automatic stay provide under subsection (a) of this section such as by terminating, annulling , modifying or conditioning such stay for cause, including **a lack of adequate protection of an interest in property of such party in interest**.

11 U.S.C. §365(d)(2) (emphasis added).

11.     Gibsonton Theater's property is not being adequately protected. It is being run in a substandard manner by a manager that is being liquidated in a formal court proceeding. An otherwise profitable theater operation is being dragged down by the baggage of the Debtor's unprofitable operations and there is really no remedy here that includes the Debtor remaining as the operator of this theater. There is no prospect that the Debtor can assume this contract as part of a reorganization and Gibsonton Theater should not be held hostage to this bankruptcy proceeding and denied the right to do what any responsible owner would do:  that being to terminate the current Management Agreement and find a replacement operator.

12.     "The automatic stay is designed to give an honest debtor the opportunity to protect its assets so that the debtor can marshal its resources to satisfy existing obligations." *In re Cabi SMA Tower I, LLLP*, No. 10-49009-BKC-AJC, 2011 WL 1321366, at *2 (Bankr. S.D.Fla. 2011) (*citing Walker v. Midland Mortgage Co. (In re Medlin)*, 201 B.R. 188, 193 (Bankr. E.D.Tenn.

1996)). But the purpose for the automatic stay does not exist here. Not only has the Debtor failed to meet its contractual obligations to Gibsonton Theater under the Management Agreement, but it also does not, and will not, have the resources to satisfy those obligations in the future. The Debtor's failure and inability to properly perform its duties under the Management Agreement constitutes a lack of adequate protection with respect to Gibsonton Theater. Accordingly, cause exists under Section 362(d)(1) to terminate the automatic stay.

### *b. Gibsonton Theater Requests that the Court Compel the Debtor to Assume or Reject the Executory Contracts*

13. In the alternative, Gibsonton Theater requests that the Court compel the Debtor to promptly assume or reject the contracts under Chapter 11 of the Bankruptcy Code.

14. Section 365(d)(2) of the Bankruptcy Code provides, in relevant part:

> In a case under chapter…11…of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan *but the court, on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.*

11 U.S.C. §365(d)(2) (emphasis added).

15. Thus, upon request, the Court may fix a deadline by which a debtor must assume or reject an executory contract. *In re Heward Bros.*, 210 B.R. 475, 476 (Bankr. D. Idaho 1997); *see also In re Public Service Co. of New Hampshire*, 884 F.2d 11, 15-16 (1st Cir. 1989). In deciding what constitutes cause to compel a debtor to assume or reject an executory contract within a reasonable period of time, courts use their discretion to consider the facts and circumstances of each case. *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2d Cir.1982). There are a number of factors that courts consider, including: 1) the nature of the interests at stake; 2) the balance of the hurt to the litigants; 3) the good to be achieved; 4) the safeguards afforded those litigants; and

5) whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary. *In re G-I Holdings, Inc.*, 308 B.R. 196, 213 (Bankr. D.N.J. 2004); *see also In re Monroe Well Serv., Inc.*, 83 B.R. 317, 323 (Bankr. E.D.Pa. 1988).

16. Each of these factors weigh in favor of the Court compelling the Debtor to promptly assume or reject the Management Agreement:

(a) *Nature of the interests at stake.* Gibsonton Theater has a substantial interest in the in its asset, the theater operation, being properly managed. It has the right to terminate the Management Agreement if the Debtor defaults in its performance of its duties under the Management Agreement, but is now unable to exercise those rights because of the automatic stay in place. The Debtor's precarious operational status makes it difficult, if not impossible for the Debtor to cure its defaults under the Management Agreement. Without some type of expedited relief, Gibsonton Theater continues to suffer diminished operational performance without the ability to seek out and find a replacement operator with the financial wherewithal and reputation to properly manage the theater.

(b) *Balance of hurt to litigants and good to be achieved.* During the pre-assumption period, although non-debtors are required to perform in accordance with a contract, the contract's terms are "temporarily unenforceable against the debtor." *In re Travelot Co.*, 286 B.R. 462, 466 (Bankr. S.D.Ga. 2002). Here, the Debtor is receiving the benefit of the executory contracts (by continuing to collect its management fee), while Gibsonton Theater bears all of the burden and risk of its theater being operated in a sub-standard manner. There is good to be achieved by accelerating the assumption-rejection decision because all parties will suffer if the decision is delayed; it is better for all parties involved for the Debtor to promptly determine whether it will accept or reject the contract so that Gibsonton Theater can take appropriate actions to protect its rights and resolve its disputes. *See In re Hawker Beechcraft, Inc.*, 483 B.R. 424, 430 (Bankr. S.D.N.Y. 2012).

(c) *Safeguards afforded to the litigants.* The Debtor is a counter party to an executory contract which is in significant default. Gibsonton Theater contracted for the Debtor to professionally and competently manage its theater operation. Gibsonton Theater is not afforded any current safeguards with respect to the Debtor's continued ability to perform under the Management Agreement and in fact, is stuck in limbo with respect to securing stable operational management for its theater in the near and long term. Compelling the Debtor to promptly place the issue of its ability to assume the Management Agreement will remove the uncertainty surrounding the Management Agreement pending the Debtor's liquidation.

(d) Whether the action to be taken is so in derogation of Congress's scheme that the court may be said to be arbitrary. The broad purpose of Chapter 11 is to permit

successful rehabilitation of debtors. *In re Dunes Casino Hotel*, 63 B.R. 939, 949 (D.N.J. 1986) (quoting *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984)). A debtor who elects to receive benefits from the other party to an executory contract pending a decision to assume or reject a contract "must, nevertheless, pay for the reasonable value of those services." *In re Travelot Co.*, 286 B.R. at 466. Here, while the Debtor's obligation is not to pay money directly to Gibsonton Theater, it is receiving benefit from the Management Agreement in the form of management fees, but it is not living up to its end of the bargain in adequately performing its duties. Further, by conceding that its case is a liquidation, the Debtor is admitting that it will not be around to manage the theater in the future, even if it could address the near term operational defaults.

17. Weighing all of these factors and the interests of the Debtor and Gibsonton Theater, cause exists to compel the Debtor to promptly submit the issue of assumption or rejection of the Management Agreement to the Court so that Gibsonton Theater can have clarity of its rights to seek replacement management.

## Notice

18. Notice of this Motion has been or will be provided to (i) counsel for the Debtor; (ii) the Office of the United States Trustee for the Western District of Michigan; (iii) the twenty largest unsecured creditors in the Debtor's bankruptcy cases; (iv) counsel for CIBC Bank USA and the participating secured lenders; and (v) parties requesting notice via ECF. Gibsonton Theater submits that such notice is sufficient and proper under the circumstances, and that no other notice need be given.

### V. Conclusion

WHEREFORE, Gibsonton Theater LLC respectfully requests that the Court enter an order, substantially in the form attached to this Motion as **Exhibit A,** (a) lifting the automatic stay to permit Gibsonton Theater to give notice of termination of the Management Agreement and allowing Gibsonton Theater to seek out an alternative manager for the theater; (b) alternatively, compelling the Debtor to make its decision on assumption of the Management Agreement so that

Gibsonton Theater can have clarity with respect to the continued viability of the Management Agreement; and (c) granting such other and further relief as the Court deems just and appropriate.

DATED:  March 20, 2020

Respectfully submitted,

/s/J. Mark Chevallier  [2020-03-20]__
**J. MARK CHEVALLIER**
Texas State Bar 04189170
**MCGUIRE, CRADDOCK & STROTHER, P.C**.
500 N. Akard Street, Suite 2200
Dallas, Texas 75201
T: 214.954.6800
F: 214.954.6868
mchevallier@mcslaw.com

**ATTORNEYS FOR GIBSONTON THEATERS LLC, ANTHONY PROPERTIES MANAGEMENT, INC. and AP GIBSONTON LLC**

## CERTIFICATE OF SERVICE

      I hereby certify that a true and correct copy of the above and foregoing was served upon the parties listed on the attached service list via U.S. Mail, first class postage prepaid, and via CM/ECF to all parties registered to receive electronic notice on March 20, 2020 and to the following parties:

Goodrich Quality Theaters, Inc.
4417 Broadmoor Ave SE,
Grand Rapids, MI 49512
**DEBTOR**

**Todd Almassian**
Keller & Almassian PLC
230 East Fulton St.
Grand Rapids, MI 49503
(616) 364-2100
Via ECF Email: ecf@kalawgr.com

**Greg J. Ekdahl**
Keller & Almassian, PLC
230 East Fulton
Grand Rapids, MI 49503
(616) 364-2100
Via ECF Email: ecf@kalawgr.com

**Nicholas Scott Laue**
Keller & Almassian, PLC
230 E. Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
Via ECF Email: ecf@kalawgr.com

**ATTORNEYS FOR THE DEBTOR**

**Brendan G. Best**
Varnum LLP
160 W. Fort St.
Fifth Floor
Detroit, MI 48226
(313) 481-7326
Via ECF:bgbest@varnumlaw.com

**William Lee Thompson**
Varnum Law
39500 High Pointe Blvd., Ste 350
Novi, MI 48375
(248) 567-7431
Via ECF:wlthompson@varnumlaw.com

**ATTORNEYS FOR CIBC BANK USA**

**Dean E. Rietberg**
Trial Attorney
Office of the US Trustee
The Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R
Grand Rapids, MI 49503
(616) 456-2002
Via ECF: Dean.E.Rietberg@usdoj.gov

**Michael V. Maggio**
Trial Attorney
Office of the US Trustee
The Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R
Grand Rapids, MI 49503
(616) 456-2002
Via ECF: michael.v.maggio@usdoj.gov

**Andrew R. Vara**
Office of the U.S. Trustee
The Ledyard Building
125 Ottawa Ave.
Suite 200R
Grand Rapids, MI 49503
Via ECF: andrew.r.vara@usdoj.gov

**Matthew W. Cheney**
Office of the US Trustee
The Ledyard Building, 2nd Floor
125 Ottawa NW, Suite 200R

Grand Rapids, MI 49503
616-456-2002
Via ECF: matthew.w.cheney@usdoj.gov

**OFFICE OF THE U.S. TRUSTEE**

/s/J. Mark Chevallier  [2020-03-20]  
**J. Mark Chevallier**

Service List re: 20 Largest Unsecured Claims (Dkt. No.1-1, filed 02/25/20)

30 W Pershing LLC
c/o EPR Properties
909 Walnut Street
Suite 200
Kansas City MO 64106-2003

Christie Digital Systems
PO Box 513386
Los Angeles CA 90051-3386

IMAX Corporation
2525 Speakman Drive
Mississaugua Ontario L5K 181

Jackson Road Cinema LLC
150 W. 2nd Street
Suite 200
Royal Oak MI 48067-3846

Jackson Crossing Realty LLC
c/o Namdar Realty Group LLC
150 Great Neck Road
Suite 304
Great Neck NY 11021-3309

Lormax Stern Development Co.
6755 DA55 Daly Road
West Bloomfield MI 48322

Microsoft Corporation
PO Box 5540
Pleasanton CA 94566-1540

PepsiCo Sales Inc.
PO Box 75948
Chicago IL 60675-5948

Spirit Master Funding X LLC
2727 N. Hardwood Street
Suite 300
Dallas TX 75201-2407

Stored Value Services
101 Buillitt Lane
Suite 305
Louisville KY 40222-5465

Sony Releasing
10202 West Washington Blvd
SPP 4505A
Culver City CA 90232-3119

Walt Disney Studios
350 S. Buena Vista Street
Burbank CA 91521-0004

Willow Knolls Peoria IL LLC
c/o Schottenstein Prop. Group
4300 E. Fifth Ave
Columbus OH 43219-1816

Vistar Corporation
6703 Haggerty Road
Belleville MI 48111-5272

Warner Bros. Distributing Co.
PO Box 936193
Atlanta GA 31193-6193

Universal Film Exchanges LLC
14180 N. Dallas Parkway
Suite 800
Dallas TX 75254-4375

Wabash Landing 11 LLC
c/o Veritas Realty
930 E. 66th Street
Indianapolis IN 46220-1138

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

| | |
|---|---|
| IN RE: § | |
| § | CASE NO. 20-00759-SWD |
| § | |
| **GOODRICH QUALITY THEATERS,** § | CHAPTER 11 |
| **INC.,** § | |
| § | HON. SCOTT W. DALES |
| *Debtor.* § | |

**ORDER GRANTING GIBSONTON THEATER, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN ORDER TO TERMINATE MANAGEMENT AGREEMENT WITH DEBTOR OR IN THE ALTERNATIVE FOR ORDER COMPELLING ASSUMPTION OR REJECTION OF MANAGEMENT AGREEMENT**

On this day, the Court considered the Gibsonton Theater, LLC's Motion For Relief From the Automatic Stay in Order to Terminate Management Agreement With Debtor or in the Alternative For Order Compelling Assumption or Rejection of Management Agreement (the "Motion") brought pursuant to 11 U.S.C. § 362 and Rule 4001 of the Federal Rules of Bankruptcy Procedure; due and proper notice of the Motion has been given to creditors and parties in interest; and the Court being duly advised in the premises. Accordingly, it is hereby

ORDERED that Gibsonton Theater, LLC's Motion is GRANTED as to the request for relief from the automatic stay; it is further

ORDERED that Gibsonton Theater, LLC is authorized to take all actions necessary to terminate the Management Agreement between Gibsonton Theater, LLC and the Debtor; it is further

ORDERED that this Order shall not be subject to the 14-day stay imposed under Fed. R. Bankr. P. 4001(a)(3).  This Order is effective immediately; it is further

ORDERED that all other relief not specifically granted herein is denied.

**END OF ORDER**