UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

**GOODRICH QUALITY THEATERS, INC.**

Debtor.

Case No. 20-00759-swd
Chapter 11
Hon. Scott W. Dales

**DEBTOR'S RESPONSE TO GIBSONTON THEATER, LLC'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY IN ORDER TO TERMINATE MANAGEMENT AGREEMENT WITH DEBTOR OR IN THE ALTERNATIVE FOR ORDER COMPELLING ASSUMPTION OR REJECTION OF MANAGEMENT AGREEMENT**

Debtor, Goodrich Quality Theaters, Inc. ("Debtor"), by and through its attorneys, Keller & Almassian, PLC, and for its Response to Gibsonton Theater, LLC's Motion for Relief from the Automatic Stay in Order to Terminate Management Agreement with Debtor or in the Alternative for Order Compelling Assumption Or Rejection Of Management Agreement (the "Motion") (DN #171) and states as follows:

**I.     Relevant Facts**

1. On February 25, 2020 (the "Petition Date"), the Debtor filed its Voluntary Petition for relief (the "Chapter 11 Case") under Chapter 11 of Title 11 of the United States Bankruptcy Code.

2. The Debtor continues to operate its business and manage its financial affairs and prospects as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3. Gibsonton Theater, LLC ("Gibsonton"), is a Delaware limited liability company.[1] Gibsonton is owned 50% by AP Gibsonton, LLC, a Texas limited liability company, and 50% by the Debtor. The Mangers of Gibsonton are Jay Anthony and Robert Goodrich.

---

[1] A copy of the Operating Agreement is not attached because it contains a Confidentiality Provision. Debtor's Counsel will provide a copy of the Operating Agreement to the Court when Gibsonton's Motion is heard.

1

Gibsonton is a manager-managed limited liability company. (See Operating Agreement, Section 3.5).

4. While the Operating Agreement vests the powers of the Company in its Managers, the Operating Agreement also permits the Managers to delegate their powers, in part, to the Debtor, including "the authority and responsibility for maintaining books and records as provided in Section 1.9, [and] management of the day-to-day operation of the Movie Theater pursuant to the terms of a Management Agreement[.]" (See Operating Agreement, Section 3.5(c)(xi)).

5. Under the terms of the Operating Agreement, the Managers may delegate their duties to Debtor, including but not limited to the day-to-day operation of the Movie Theater pursuant to the Management Agreement. The Managers delegated their powers to the Debtor pursuant to the Management Agreement. A copy of the Management Agreement is attached as **Exhibit A**. Notably, the Management Agreement is signed by both Managers of Gibsonton because Gibsonton needed a majority vote to enter into such an arrangement with the Debtor.

6. Similarly, Gibsonton needed a majority vote to retain counsel and file the instant Motion. However, Gibsonton may have failed to seek consent from Bob Goodrich for retaining counsel and filing the instant Motion. Accordingly, Gibsonton lacks standing to bring the instant Motion.

7. Jay Anthony claims to be disinterested, however, nothing in the Management Agreement requires termination of the Debtor as the theater manager. The Management Agreement and Operating Agreement are the controlling documents.

**II.     Law and Analysis**

    **a.  Relief from the Automatic Stay is Inappropriate**

8. Assuming that Gibsonton has standing, Gibsonton is seeking relief from the automatic stay because Debtor allegedly breached the Management Agreement. Gibsonton identifies the following breaches: (1) failure to pay salaried theater managers on two occasions; (2) failure to stay current with its payments to its movie distributors; and (3) "slow paid" or did not pay critical theater vendors such as concession vendors. In sum, Gibsonton argues that the Debtor is mismanaging the theater. However, Gibsonton does not identify when, if at all, the alleged mismanagement occurred. See e.g. *In re Holly's, Inc.*, 140 B.R. 643, 690 (Bankr. W.D. Mich., 1992) (holding that pre-petition management normally will not give sufficient cause to lift the stay, however, post-petition mismanagement may give rise for cause to lift the automatic stay if the mismanagement has caused a diminution in the collateral).

9. "Cause" under Section 362(d)(1) is "an intentionally broad and flexible concept which must, of necessity, be determined on a case by case analysis." *See Sumitomo Trust & Banking Co. v. Grand Rapids Hotel L.P. (In re Holly's Inc.)*, 140 B.R. 643, 687 (Bankr. W.D. Mich. 1992). As this court recently observed, "[t]he Bankruptcy Code does not define 'cause,' and courts have interpreted the term flexibly to balance the legitimate interests of creditors and debtors." *In re: Krieger*, ___B.R.___; 2019 Bankr LEXIS 3869, at *15 (Bankr. W.D. Mich., Dec. 18, 2019), citing and quoting *In re McLain*, No. DL 17-02218, 2019 Bankr. LEXIS 1699, 2019 WL 2323776, at *2 (Bankr. W.D. Mich. May 29, 2019); see also *Chrysler LLC v. Plastech Engineered Prods., Inc. (In re Plastech Engineered*

*Prods., Inc.)*, 382 B.R. 90, 109 (Bankr. E.D. Mich. 2008) (describing "cause" as an "elastic concept" varying with the circumstances of each case.

10. "It is also worth noting that the longer a Chapter 11 case continues, the heavier the burden on the Debtor to justify injunctive mandate of Section 362(a)." *In re: Krieger*, ___B.R.___; 2019 Bankr. LEXIS 3869, at *15 (Bankr. W.D. Mich., Dec. 18, 2019), citing *In re Holly's, Inc*, 140 B.R. 643, 700 (Bankr. W.D. Mich., 1992).

11. Gibsonton argues that "cause" exists under 362(d)(1) because Gibsonton is not being "adequately protected." It appears that Gibsonton is more concerned about the Debtor's future performance under the Management Agreement; this concern is premature. More importantly, Debtor is owed approximately $115,000.00 from Gibsonton for payroll, and it is owed $6,000 for the month of March for its management fee under the Management Agreement. It is Gibsonton that is "slow paying", not the Debtor.

12. First and foremost, this case is a little over a month old. Under *In re Holly, Inc.*, the burden on the Debtor is low to justify the injunctive mandate of Section 362(a).

13. Second, the reasons provided by Gibsonton are speculative or immaterial as to performance under the Management Agreement. For example, Gibsonton states that the Debtor's alleged failure to pay salaried managers on two occasions has resulted in "low morale among the employees." The theaters are now closed and a limited staff is necessary.

14. Third, termination of the management could prejudice Debtor from maximizing its interest in Gibsonton. The Management Agreement has value and may contribute to a higher sale price if it remains in place.

15. Finally, Gibsonton asserts, without evidence, that Debtor "does not, and will not, have the resources to satisfy those obligations [under the Management Agreement] in the future."

4

This argument is completely speculative. In fact, the Debtor has obtained a DIP loan to provide for its necessary operating costs in this case, and additionally, under the Debtor's management, Gibsonton, "unlike many of the Debtor's owned and operated locations, **is profitable**" (emphasis added), i.e. when the theater is able to operate, it generates sufficient cash collateral to for the Debtor to operate and pay its expenses at that facility. Simply, Gibsonton's Motion fails to offer any evidence whatsoever of any alleged diminution in value because of the Debtor's management, and in fact, there is no such diminution.

16. The Debtor is discussing a revised DIP budget with its lender group. Debtor needs additional time to evaluate its options.

17. It is clear from Gibsonton's Motion that it is concerned about the future management of its Theater under the Debtor during the pendency of this Chapter 11. However, concern and speculation are not grounds for relief from the automatic stay. Accordingly, relief from the automatic stay should be denied.

   **b. Debtor should not be Compelled at this Early Stage to Assume or Reject the Management Agreement**

18. "Under § 365(d)(2), unless the bankruptcy court specifies a shorter time period, a chapter 11 debtor in possession has until a reorganization plan is confirmed to decide whether to accept or reject an executory contract. When such a request is made, a court must determine a reasonable period of time within its discretion based upon the facts and circumstances of the case." *In re Holly's, Inc*, 140 B.R. 643, 682 (Bankr. W.D. Mich., 1992).

19. As identified above, this case is a little over a month old. The Debtor is still getting its feet underneath it, and it has made substantial progress on the financials and landlord-tenant disputes.

20. Gibsonton has also not identified any post-petition breaches of the Management Agreement. Gibsonton has unequivocally admitted that under the Debtor's management, Gibsonton is profitable, and the Debtor has a DIP loan to ensure its administrative solvency and ability to pay for on-going expenses, including any expenses potentially associated with this facility.

21. Finally, the Debtor is entitled to breathe freely in the reorganization process and consider its possible plans. The Debtor should be entitled this opportunity to consider its options before assuming or rejecting the Management Agreement.

22. Accordingly, Debtor respectfully requests that the time period to assume or reject the Management Agreement not be shortened.

WHEREFORE, Debtor respectfully requests that Gibsonton's Motion be denied, and grant such further relief as this Court deems appropriate under the circumstances.

KELLER & ALMASSIAN, PLC

Dated: April 2, 2020

/s/ Nicholas S. Laue
A. Todd Almassian (P55467)
Greg J. Ekdahl (P67768)
Nicholas S. Laue (P79260)
230 East Fulton Street
Grand Rapids, MI 49503
(616) 364-2100
nlaue@kalawgr.com