**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In the Matter of:

**GOODRICH QUALITY THEATERS, INC.**

        Debtor

                                             /

Case No. 20-00759-swd
Chapter 11
Hon. Scott W. Dales

**ORDER (A) APPROVING BIDDING PROCEDURES FOR THE PROPOSED SALE OF SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS AND THE ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES, (B) APPROVING BID PROTECTIONS, (C) APPROVING THE ESTABLISHMENT OF CURE AMOUNTS, AND (D) SCHEDULING A FINAL SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF**

This matter coming before the Court on the *Debtor's Bidding Procedures and Sale Motion (I) (A) Approving Bidding Procedures for the Proposed Sale of Substantially All of the Debtor's Assets and the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, (B) Approving Bid Protections, (C) Approving the Establishment of Cure Amounts, and (D) Scheduling a Final Sale Hearing and Approving the Form and Manner of Notice Thereof; and (II) (A) Authorizing the Sale of Substantially All of the Debtor's Assets Free and Clear of Liens, and (B) Authorizing the Assumption and Assignment of Executory Contracts and Leases, and (C) Granting Related Relief* (the "Bid Motion").

In the Bid Motion, the Debtor requested, pursuant to sections 105, 362, 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006, entry of (i) an order: (a) authorizing procedures for the marketing and sale of the Assets (collectively, the "Bidding Procedures Relief"), including, but not limited to, (i) approving the procedures that are attached hereto as Schedule 1 (the "Bidding Procedures") and (ii) approving the conduct of an auction for the sale of the Assets (the "Auction"); (b) scheduling a hearing (the "Sale Hearing") to consider approving (1) the sale of substantially all of the Assets of the Debtor and (2) the terms of the assumption and assignment of certain related executory contracts and unexpired leases to which the Debtor is a party (any such

contract or lease, a "Seller Contract"); and (c) authorizing and approving the form and manner of the Debtor's proposed notice of the Auction and a Sale Hearing; and (ii) an order authorizing and approving a Sale (as such term is defined below) to the Successful Bidder in accordance with the Successful Bid (as such terms are defined in the Bidding Procedures) (the "Sale Order").

The Court (a) having reviewed the Bid Motion, the "Declaration of Robert Emmett Goodrich In Support Of Chapter 11 Petition And First Day Motions" and the "Declaration of Michael Krakovsky;" (b) having conducted a hearing on June 12, 2020 to consider the Bidding Procedures Relief requested in the Bid Motion (the "Hearing"); and (c) having considered the record and statements of counsel and the evidence presented at the Hearing; IT IS HEREBY FOUND AND DETERMINED THAT:

A.  The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court granting the Bidding Procedures Relief requested in the Bid Motion relating to (1) the stalking horse Asset Purchase Agreements for GTN and Tivoli (including all exhibits, schedules, and ancillary agreements related thereto, the "Purchase Agreements") by and between the Debtor and Goodrich Theater Newco, LLC ("GTN") and Tivoli Enterprises, Inc. ("Tivoli")(collectively the "Buyers"), dated as of June 8 and June 9, 2020, respectively, which proposes the sale of the Assets to the Buyers (the "Sale"), and (2) the procedures described below for the determination of the amounts necessary to cure defaults under the Seller Contracts (the "Cure Costs") so as to permit the assumption and assignment under section 365 of the Bankruptcy Code of the Seller Contracts that may be assumed and assigned to the Buyers and (3) the forms of the Sale Notice and Cure Notice attached with the exhibits to the Bid Motion.

B.  The Debtor has articulated good and sufficient reasons for, and the best interests of its estate will be served by, this Court scheduling a subsequent Sale Hearing to consider granting

other relief requested in the Bid Motion, including approval of the Sale and the transfer of the Assets to the Successful Bidder free and clear of all liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code.

IT IS HEREBY ORDERED THAT:

1. The Bidding Procedures Relief requested in the Bid Motion is GRANTED to the extent set forth herein.

2. The Bidding Procedures, which are attached hereto as Schedule 1, are hereby approved and shall govern all bids and bid proceedings relating to the sale of the Assets.

3. In conjunction with the sale process, the Debtor shall be represented by Stout, the Operating Debtor's CEO, Bob Goodrich, and Novo (collectively the "Debtor Auction Team") in consultation with the Committee, DIP Lender, Prepetition Agent, and the Prepetition Lenders for all purposes in publicizing the Sale, evaluating bids and generally guiding the course of the auction process, consistent with, *inter alia*, the Interim DIP Order.

4. The Good Faith Deposits of the Buyers and any other Potential Bidder shall be held in escrow by the Deposit Agent and shall not become property of the Debtor's bankruptcy estate unless and until released from escrow to the Debtor pursuant to the terms of the applicable escrow agreement.

5. The deadline for submitting a Qualified Bid (as such term is defined in the Bidding Procedures) shall be 5:00 p.m. (Prevailing Eastern Time) on June 22, 2020 (the "Bid Deadline").

6. As further described in the Bidding Procedures, the Debtor shall conduct the Auction at 10:00 a.m. (Prevailing Central Time) on June 25, 2020 if more than one Qualified Bid for the Assets is timely received. If no other Qualified Bids are received, no Auction shall be necessary.

7.  The Court shall conduct the Sale Hearing on June 29, 2020 at 10:00 a.m. (Prevailing Eastern time), at which hearing the Court will consider approval of the Sale to the Successful Bidder.

8.  The form of the Sale Notice attached hereto as Schedule 2 is hereby approved in all respects.

9.  In recognition of the considerable time, energy, and resources that the Buyers have expended in connection with the Purchase Agreements and related transactions, the Debtor has agreed that if the Buyers are not the successful bidders (or if the Debtor consummates any plan or sale of all or substantially all of the Debtor's Assets other than the Purchase Agreements), the Buyers shall be entitled to the Bid Protections pursuant to each Purchase Agreement, including a Break-Up Fee of approximately 3% of the Purchase Price ($150,000 pursuant to the Tivoli Stalking Horse APA, and $360,000 plus any cure costs pursuant to the GTN Stalking Horse APA) and an Expense Reimbursement ($25,000 pursuant to the Tivoli Stalking Horse APA, and $75,000 pursuant to the GTN Stalking Horse APA). The Bid Protections shall be deemed allowed administrative expenses under Bankruptcy Code sections 503(b) and 507(a)(2) and shall be paid in accordance with the provisions of the Purchase Agreements in the event that any Buyer is not the successful bidder.

10.  With respect to any Sale, the DIP Lender (or one or more of its designees, affiliates, or assignees, alone or together with the Prepetition Agent) and the Prepetition Agent on behalf of the Prepetition Lenders (or one or more of its designees, affiliates, or assignees, alone or together with the DIP Lender) shall have the unqualified right to credit bid under Section 363(k) of the Bankruptcy Code up to the full amount of the DIP Loan, in the case of the DIP Lender, and up to the full amount of the Prepetition Obligations, in the case of the Prepetition Agent, in any sale of DIP Collateral or Prepetition Collateral, as the case may be (a "Credit Bid"). Such unqualified

right to submit one or more Credit Bids shall not be limited, diminished or otherwise conditioned or restricted, whether under Section 363(k) for "cause" or otherwise.  Any Credit Bid shall automatically be deemed a Qualified Bid pursuant to the Bidding Procedures.  Any Credit Bid shall, solely to the extent there is insufficient cash in the Debtor's estates at the time of the Auction to pay any Carve Outs required by the Interim Order in addition to any Court-approved applicable Break-Up Fee due under either of the Stalking Horse Agreements, also include a cash component sufficient to pay, and earmarked exclusively for the payment of, any such Court-approved applicable Break-Up Fee.

11.  Beginning at the closing of the first Sale to close, and for each subsequent closing, except in the event a Credit Bid is the Successful Bid in such Sale, the net purchase price shall be distributed, first, to the Debtor in an amount necessary to fund or escrow for any unpaid Budgeted expenses under the Interim Order through the date of the entry of such Sale Order and the Carve-out in an amount necessary to fund the Post-trigger Carve-out Account as if a Carve-out Trigger Notice had been given under the Interim Order on the day of the entry of such Sale Order; second, to the DIP Lender on account of the DIP Loan; and third, to the Prepetition Lenders on account of the Prepetition Loans.

12.  All parties in interest shall receive or be deemed to have received good and sufficient notice of all relief sought in the Bid Motion, including but not limited to the Sale Hearing, the proposed Sale Order, the proposed sale of the Assets and the Cure Costs as well as the proposed assumption and assignment of the Seller Contracts if, as promptly as practically possible upon the entry of this Order, but no later than fourteen (14) days prior to the Sale Hearing (the "<u>Mailing Deadline</u>"), the Debtor serves a copy of the Sale Notice upon  (i) all of the Debtor's creditors that have filed proofs of claim in the Debtor's chapter 11 case or whose claims are listed by the Debtor in its schedules of liabilities, (ii)  any party who, in the past year, expressed in writing

to the Debtor an interest in the Assets or the Debtor's other assets; (iii) nondebtor parties to the executory contracts and unexpired leases identified as being assumed and assigned pursuant to the Purchase Agreement; (iv) all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Debtor's assets; (v) the Securities and Exchange Commission; (vi) the Internal Revenue Service; (vii) applicable state and local taxing authorities; and (viii) the United States Attorney for the Western District of Michigan.

13. The deadline for objecting to approval of the Sale for any reason (other than for objections to any proposed Cure Costs or the provision of adequate assurance of future performance under Seller Contracts by the Successful Bidder), including the sale of the Assets free and clear of liens, claims, encumbrances and other interests pursuant to section 363(f) of the Bankruptcy Code shall be 4:00 p.m. (Prevailing Eastern Time) on June 22, 2020 (the "Sale Objection Deadline").

14. Except as provided in paragraph 15 below, to be considered, objections to the Sale or any of the related relief sought therein must (a) be in writing, (b) state the basis of such objection with specificity, (c) conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Western District of Michigan and (d) be filed with the Bankruptcy Court and served in accordance with the rules of the Bankruptcy Court upon : Debtor c/o Goodrich Quality Theaters, Inc., Attn: Bob Goodrich, CEO, 4417 Broadmoor Ave. SE, Grand Rapids, MI 49512, Email: bgoodrich@gqt.com; (B) Debtor's counsel, Keller & Almassian, PLC, Attn: A. Todd Almassian, Esq. and Greg J. Ekdahl, Esq., 230 East Fulton Street, Grand Rapids, MI 49503, Email: talmassian@kalawgr.com and gekdahl@kalawgr.com; (C) counsel to CIBC Bank USA, Varnum LLP, Attn: Brendan G. Best, Esq. 160 W. Fort St., 5th Floor, Detroit, MI 48226, Email: bgbest@varnumlaw.com; (D) counsel for the Unsecured Creditor Committee; Maxim B. Litvak, Pachulski Stang Ziehl & Jones, 150 California Street, 15th Floor, San Francisco,

CA 94111, Email: mlitvak@pszlaw.com, and Douglas Lutz, Frost Brown Todd, 301 E 4th St #3300, Cincinnati, OH 45202, Email: dlutz@fbtlaw.com; and (E) Debtor's court-appointed investment banker, Stout Risius Ross Advisors, LLC, Attn: Michael Krakovsky, 10100 Santa Monica Blvd, Suite 1050, Los Angeles, CA 90067, Telephone: (310) 846-8895, Email: mkrakovsky@stout.com (collectively, the "Notice Parties"), so as to be actually received no later than the Sale Objection Deadline.

15.   The form of the Cure Notice attached hereto as Schedule 3 is hereby approved in all respects. Not less than fourteen (14) days prior to the Sale Hearing, the Debtor shall file with the Court a schedule of cure obligations for the Seller Contracts that are being made available to the Buyer for potential assumption and assignment (a "Contract and Cure Schedule") and shall include the same with the service of the Cure Notice. The Contract and Cure Schedule shall include a description of each Seller Contract to potentially be assumed and assigned under the Purchase Agreement and the Cure Costs, if any, necessary to cure such Seller Contracts pursuant to section 365 of the Bankruptcy Code. A copy of the Cure Notice, together with the Contract and Cure Schedule, shall be served by first-class mail, or email if no address is available, on each of the nondebtor parties listed on the Contract and Cure Schedule. As soon as practicable after the receipt of a Qualified Bid (which is due by 5 p.m. Prevailing Eastern Time on June 22, 2020) seeking the assumption and assignment of any Seller Contract or any executory contract or unexpired lease of the Debtor not listed on the Contract and Cure Schedule (any such contracts, "Alternative Bidder Contracts"), the Debtor shall file notice of such election with the Court and serve upon each affected counterparty of the applicable Seller Contract or Alternative Bidder Contracts the Cure Notice and the amount of any Cure Costs associated with such Seller Contract or Alternative Bidder Contracts.

16. Any objections to any proposed Cure Costs for any Seller Contract (any such objection, a "Cure Objection", and any such disputed costs, "Disputed Cure Costs") or to the provision of adequate assurance of future performance under any Seller Contracts (an "Adequate Assurance Objection"), must be in writing and filed with the Court and served on the Notice Parties so as to be received no later than 5:00 p.m. (Prevailing Eastern Time) on June 23, 2020; *provided, however*, counterparties to Alternative Bidder Contracts shall have until the start of the Sale Hearing to file and serve any objections to the assumption and assignment of an Alternative Bidder Contract.

17. If no timely Cure Objection or Adequate Assurance Objection is filed and served with respect to a Seller Contract or Alternate Bidder Contract, then (a) the Cure Costs identified in the Contract and Cure Schedule with respect to the Seller Contracts will be the only amounts necessary under section 365(b) of the Bankruptcy Code to cure all monetary defaults under such Seller Contracts or Alternate Bidder Contract if the Buyer (or other Successful Bidder) ultimately decides to have the applicable Seller Contract or Alternate Bidder Contract assumed and assigned to it; (b) the Successful Bidder will be deemed to have provided adequate assurance of future performance under the applicable Seller Contract or Alternative Bidder Contract in accordance with section 365(f)(2)(B) of the Bankruptcy Code if the Buyer (or other Successful Bidder) ultimately decides to have the applicable Seller Contract or Alternative Bidder Contract assumed and assigned to it; and (c) the party failing to timely file a Cure Objection or Adequate Assurance Objection shall be forever barred from asserting such objections against the Debtor, its estate or the Successful Bidder.

18. If a timely Cure Objection or Adequate Assurance Objection is received and any such objection cannot otherwise be resolved by the parties, such objection shall be resolved at the Sale Hearing or at a subsequent hearing set by the Court.

19. Except as may otherwise be agreed to by the parties to a Seller Contract or Alternative Bidder Contract, the defaults under the Seller Contracts or Alternative Bidder Contracts that need to be cured in accordance with section 365(b) of the Bankruptcy Code shall be cured by cash payments made by the Buyer in accordance with the provisions of the Purchase Agreement (or any other Successful Bidder as determined at the conclusion of the Auction).

20. Notwithstanding any provision in this Order, the Purchase Agreement or the Bidding Procedures, this Order does not satisfy, and the Court has not yet determined if the Debtor has satisfied, the requirements of section 365 of the Bankruptcy Code for any particular Seller Contract or Alternative Bidder Contract, including those relating to the cure of any existing default or providing adequate assurance of future performance. No Seller Contract or Alternative Bidder Contract will be deemed assumed and assigned until the Court has entered an order authorizing the assumption and assignment of a particular Seller Contract or Alternative Bidder Contract and the Sale pertaining to such Seller Contract or Alternative Bidder Contract is closed. The Successful Bidder will have no rights in and to any particular Seller Contract or Alternative Bidder Contract until such time as the particular Seller Contract or Alternative Bidder Contract is assumed and assigned to the Successful Bidder.

21. The inclusion of a Seller Contract or Alternative Bidder Contract on the Contract and Cure Schedule will not: (a) obligate the Debtor to assume any Seller Contract or Alternative Bidder Contract listed thereon or obligate the Successful Bidder to take assignment of such Seller Contract or Alternative Bidder Contract; or (b) constitute any admission or agreement of the Debtor that such Seller Contract or Alternative Bidder Contract is an executory contract or unexpired lease. Only those Seller Contracts or Alternative Bidder Contract that are included on a schedule of assumed and assigned contracts attached to the definitive sale agreement with the Successful Bidder (including amendments or modifications to such schedules in accordance with

such agreement and any designation rights procedures approved in the Sale Order) will be assumed and assigned to the Successful Bidder.

22. The failure of any objecting person or entity to timely file its objection to the Sale and related relief shall be a bar to the assertion, at the Sale Hearing or thereafter, of any objection to the Motion, or to the consummation and performance of the Sale contemplated by the Purchase Agreement, including the transfer of the Assets to the Successful Bidder, free and clear of all liens, claims, encumbrances and other interests.

23. Any and all fees due and owing to Stout in connection with any Sale that is consummated and approved pursuant to this Order shall be paid in cash directly to Stout by the Buyer directly out of the proceeds of the Sale at closing without further order of this Court (the "Stout Fee Payment"); provided, however, that such Stout Fee Payment remains subject to objection as provided in the order approving the Stout Retention dated March 30, 2020 (dkt. # 191).

24. The Court shall retain exclusive jurisdiction over any matter or dispute arising from or relating to the implementation of this Order.

**END OF ORDER**

**IT IS SO ORDERED.**



**Dated June 12, 2020**

Scott W. Dales
United States Bankruptcy Judge