UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| GOODRICH QUALITY THEATERS, INC. | ) | Case No. 20-00759-swd |
| | ) | |
| Debtor. | ) | Hon. Scott W. Dales |
| | ) | |
| | ) | **Related to Docket Nos. 336, 346** |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO DISTRIBUTION PROVISION IN PROPOSED ORDER APPROVING SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTOR**

The Official Committee of Unsecured Creditors (the "Committee") of Goodrich Quality Theaters, Inc. (the "Debtor") in the above-captioned case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") hereby files this objection (this "Objection") to the distribution provision in the proposed form of *Order (I) Authorizing Sale Free and Clear of Liens, Claims, Interests, and Encumbrances, (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases in Connection Therewith, and (III) Granting Related Relief* (the "Proposed Sale Order").[1] The Proposed Sale Order was attached to the order approving bid procedures entered by the Court on June 12, 2020 [Docket No. 346]. The Debtor's sale motion was filed on June 9, 2020 [Docket No. 336].

In support hereof, the Committee respectfully represents as follows:

1. The Committee fully supports the Debtor's proposed sales of assets and a prompt closing of such sales.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Proposed Sale Order.

2.      The Committee's only issue is with respect to the distribution provision in the Proposed Sale Order in favor of the Prepetition Lenders. Specifically, paragraph 22 of the Proposed Sale Order provides as follows:

> Upon Closing, the net purchase price shall immediately be distributed, first, to the Debtor in an amount necessary to fund or escrow for any unpaid Budgeted expenses under the Interim Order through the date of this Sale Order and the Carve-out in an amount necessary to fund any unfunded amount of the Post-trigger Carve-out Account as if a Carve-out Trigger Notice had been given under the Interim Order on the day of entry of this Sale Order; second, to the DIP Lender on account of the DIP Loan; third, to the Prepetition Agent on behalf of the Prepetition Lenders on account of the Prepetition Loans; and fourth, to the Debtor's estate.

3.      The Committee objects to any immediate distribution of net sale proceeds at the closing to the *Prepetition Lenders* on account of their *Prepetition Loans*. The estimated distribution to the Prepetition Lenders would total approximately $11.2 million. The Committee has no objection to repayment of the *postpetition* DIP Loan (approximately $3.1 million) out of net sale proceeds.

4.      The proposed immediate distribution of net sale proceeds at closing to the Prepetition Lenders prior to confirmation of a plan runs afoul of the fundamental principle of chapter 11 that distributions to prepetition creditors should not take place except under a confirmed plan or at least as part of an orderly dismissal that ensures payment of all allowed administrative expenses in full, including allowed estate professional fees. *See In re Conroe Forge & Mfg. Corp.*, 82 B.R. 781, 784 (Bankr. W.D. Pa. 1988) ("The general rule is that distribution should not occur except pursuant to a confirmed plan of reorganization, absent extraordinary circumstances.") (citing *Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d

Cir. 1986)); *see also Rosenberg Real Estate Equity Fund III v. Air Beds, Inc. (In re Air Beds, Inc.),* 92 B.R. 419, 422 (B.A.P. 9th Cir. 1988) (same). Indeed, Federal Rule of Bankruptcy Procedure 3021 assumes that distribution will occur only after a plan is confirmed: "[A]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed ..." Fed. R. Bankr. P. 3021.

5. For example, in *In re Air Beds, Inc.*, the bankruptcy court had allowed the debtor to pay $60,000 as a distribution to the IRS before confirmation of a plan. Reversing, the Bankruptcy Appellate Panel of the Ninth Circuit stated: "It is not the propriety of the sale, but the disposition of the sale proceeds which is at issue in this case. We conclude that the bankruptcy court abused its discretion because the order allowing the distribution of the sale proceeds allows the debtor to circumvent the provisions of the Bankruptcy Code for the administration of a case under Chapter 11." 92 B.R. at 422. The Court further stated: "[R]egardless of whether the payment was for pre-petition or post-petition taxes, the court's order would allow the debtor to circumvent the provisions of Chapter 11 with respect to proposal, disclosure, and confirmation of a plan … There is no showing why the retention of the proceeds by the debtor in possession, in its capacity as trustee, with a lien attaching to the funds, would not protect the IRS pending confirmation of a plan and a distribution under the plan as contemplated by the Bankruptcy Code." *Id.* at 424.

6. Similarly, in *In re Conroe Forge & Mfg. Corp.,* a secured creditor requested that it immediately receive the proceeds of the sale of a piece of the debtors' machinery that was sold free and clear of liens. The creditor held a perfected security interest in

the debtor's land, buildings, and machinery, and was owed in excess of $2,000,000. The sales price of the machinery was $149,000. The creditor argued that it was entitled to the immediate payment of the sale proceeds, despite the fact that the motion to sell merely provided that the creditor's lien would attach to the sale proceeds. The court denied the request for payment, holding that the secured creditors' interest in the proceeds of the sale were adequately protected, and there were no extraordinary circumstances justifying a distribution of proceeds prior to confirmation of reorganization plan. *Id*. at 787.

7. Similarly here, the Prepetition Lenders will be adequately protected by the estate holding the net proceeds of sale pending further order of this Court and there are no extraordinary circumstances requiring approximately $11.2 million of estimated sale proceeds to be distributed to the Prepetition Lenders immediately.

8. On June 25, 2020, the Debtor filed an expedited motion asking the Court to set an administrative expense bar date of July 15, 2020, with a separate bar date for estate professionals of August 15, 2020 [Docket No. 387]. Until those bar dates come and go, the amount of unpaid and potentially allowable administrative expense claims in this case, including post-closing wind-down expenses, is unknown.

9. The Debtor and the Prepetition Lenders may argue that the Debtor is setting aside sufficient funds to satisfy *projected* administrative expenses and a wind-down budget for the post-closing period. But no one knows whether those projections are correct. For example, the Debtor budgets only $100,000 for potential unknown claims that may be asserted and $0 for Committee professionals during the post-closing wind-down period, apparently

assuming that the Committee can simply ignore its statutory duties post-closing. There is no need to rush to immediately distribute sale proceeds on account of prepetition claims when the Debtor's requested bar dates are only a few weeks away. Why should the estate take the risk that administrative claims ultimately total more than what the Debtor currently projects? The Prepetition Lenders should not be paid on account of their *prepetition* claims, and should not benefit from marshalling and surcharge waivers under the proposed final order approving the DIP Loan, unless and until all administrative expense claims have been finally determined and satisfied in full.[2]

10. In order to receive distributions from the pending going concern sales of the Debtor's assets, the Prepetition Lenders must pay the freight of this case. Anything less should be construed as a *sub rosa* plan that could have the unfortunate result of leaving behind an administratively insolvent estate.

11. For the foregoing reasons, the Committee respectfully requests that the Court decline to approve the distribution provision in the Proposed Sale Order and require that all net sale proceeds, after payment of the DIP Loan, must be held by the Debtor in reserve pending further order of the Court.

*[signature page follows]*

---

[2] The Committee continues to discuss the terms of the proposed final DIP order in this case with counsel to the DIP Lender and reserves all rights in connection therewith consistent with the Committee's objection previously filed on April 13, 2020 [Docket No. 240].

| | |
|---|---|
| Dated: June 26, 2020 | **PACHULSKI STANG ZIEHL & JONES LLP**<br>Robert J. Feinstein, Esq.<br>Bradford J. Sandler, Esq.<br>Steven W. Golden, Esq.<br>780 Third Avenue, 34th Floor<br>New York, NY  10017<br>Telephone:  (212) 561-7700<br>Facsimile:   (212) 561-7777<br>Email: rfeinstein@pszjlaw.com<br>           bsandler@pszjlaw.com<br>           sgolden@pszjlaw.com<br><br>-and-<br><br>**FROST BROWN TODD LLC**<br><br>*/s/ Ronald E. Gold*<br>Ronald E. Gold, Esq.<br>Douglas L. Lutz, Esq.<br>A.J. Webb, Esq.<br>3300 Great American Tower<br>301 East Fourth Street<br>Cincinnati, Ohio 45202<br>Telephone: (513) 651-6800<br>Facsimile:  (513) 651-6981<br>Email:  rgold@fbtlaw.com<br>            dlutz@fbtlaw.com<br>            awebb@fbtlaw.com<br><br>-and-<br><br>Frost Brown Todd LLC<br>900 Victors Way, Suite 330<br>Ann Arbor, Michigan 48108<br>Telephone:  (734) 669-1450<br>Facsimile:   (734) 669-1451<br><br>*Proposed Co-Counsel to the Official Committee of Unsecured Creditors* |