UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

GOODRICH QUALITY THEATERS, INC.,

        Debtor.
_____/

Case No. DG 20-00759
Hon. Scott W. Dales
Chapter 11

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                Chief United States Bankruptcy Judge

On September 16, 2020, the court held a hearing, by telephone due to the public health emergency, to consider the Motion of the United States Trustee for Conversion to Chapter 7 (ECF No. 498, the "Conversion Motion"). The Debtor ("DIP"), the Official Committee of Unsecured Creditors (the "Committee"), creditor 30 West Pershing, LLC, CIBC Bank USA in its capacity as DIP Lender and prepetition agent for several prepetition lenders ("CIBC"), and the United States Trustee ("UST") all appeared through counsel. The court conducted the hearing in connection with the Debtor's Motion for Entry of an Order Dismissing the Chapter 11 Case (ECF No. 476, the "Dismissal Motion"), which the UST opposes.

The court has jurisdiction over the DIP's case under 28 U.S.C. § 1334, and authority to resolve the Conversion Motion under 28 U.S.C. § 157(a), (b)(2)(A), and (b)(2)(O). A hearing under 11 U.S.C. § 1112(b)[1] is a core proceeding.

The parties all agree that "cause" exists to dismiss or convert the case under § 1112(b) following the sale of substantially all property of the estate and distribution of sale proceeds in

_____

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

accordance with the court's prior orders.  There is, obviously, no prospect for reorganization now that the going-concern sales have been effected.

It is true, as the parties also agree, that the DIP is holding a not-insubstantial sum of cash and receivables comprising, *inter alia*, deposit refunds, rebates from insurance providers and other vendors (such as Blue Cross/Blue Shield and Pepsi), sale holdbacks, and assorted funds from other sources.  During the hearing, CIBC stated (without contradiction from the UST, the DIP or the Committee) that the cash in the DIP's hands is "cash collateral" under § 363(a) because it is subject to CIBC's unassailable lien.  After taking that lien into account, CIBC asserted, again without controversy, that it holds an unsecured claim of approximately $17 million.  As the Committee's counsel argued, notwithstanding a trustee's typical powers under chapter 5, after the sale orders, cash collateral orders, and financing orders entered throughout the case, there is absolutely no prospect for any payment to unsecured creditors.  Under the circumstances, the only issue is whether, in the words of the statute, conversion or dismissal "is in the best interests of the creditors and the estate . . ."  11 U.S.C. § 1112(b)(1).

All participants at the hearing -- save for the UST -- regarded the chapter 11 case as a success and all agreed, save for the UST, that dismissal, rather than conversion, is in the best interests of creditors and the estate.

In support of conversion over dismissal, the UST argued that a chapter 7 trustee is certainly "incentivized" and capable of making the wind-down distributions from the substantial cash on hand (which the UST pegs at approximately $2.9 million), and that an independent trustee might regard chapter 5 recoveries as a possibility notwithstanding the prior resolution in connection with the sale.  Similarly, the UST suggested a trustee could ensure that the interests of taxing authorities

are appropriately addressed;[2] a trustee could amend income tax returns (presumably to "carry back" certain losses that are typically "carried forward" since the DIP is no longer operating); a chapter 7 trustee could review claims;[3] and a trustee could otherwise administer the funds in the DIP's hands.

Additionally, the UST's counsel expressed concern that the court would set a bad precedent by allowing interested parties to use the bankruptcy sale process under § 363 to skirt court-supervised distributions that would occur under a confirmed plan or, in the case of conversion, § 726. *See* Objection by the United States Trustee to Debtor's Motion to Dismiss Chapter 11 Case (ECF No. 497) at ¶ 21 (arguing that dismissal would permit parties to "reap the benefits from the comprehensive bankruptcy process without also accepting its obligations").[4]

With respect to precedent, both camps pitched what the court perceives as policy arguments. The DIP suggested that dismissal would make the Western District of Michigan an attractive venue to creditors and others for future chapter 11 cases; the UST's counsel suggested that the relief requested in the Dismissal Motion is without precedent in our district.

Although always mindful of setting precedent, the court has no legitimate interest either in promoting our district as a haven for chapter 11 cases or a forum that eschews novel approaches to thorny problems. Instead, under the statute, it must evaluate the interests of *this* estate and the creditors of *this* estate. 11 U.S.C. § 1112(b)(1).

---

[2] In the court's experience, most taxing authorities are perfectly capable of protecting themselves, so this argument has little force.

[3] Under § 704(a)(5), a trustee should only examine proofs of claim "if a purpose would be served," which is doubtful considering CIBC's staggering deficiency claim after applying its cash collateral in accordance with the court's prior orders.

[4] There is no serious suggestion from the UST, however, that the DIP (or others who prefer dismissal) are endeavoring to jump over or otherwise undermine the Bankruptcy Code's priority scheme through an extra-statutory "structured dismissal" as arguably occurred in *Czyzewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017). And, the court intends to stay within the confines of §§ 105, 349 and 1112 when finally addressing the relief requested in the Dismissal Motion next month.

To resolve the paramount question of whether the court should favor conversion over dismissal, the UST offered no persuasive reason for the court to substitute the UST's view of the interests of creditors in place of the views expressed by these same creditors' duly constituted representative (the Committee), or the views of the single largest unsecured creditor (CIBC), both of whom oppose conversion.  Moreover, the DIP -- the representative of the estate with an untainted history as its fiduciary -- opposes conversion. Moreover, the court shares the Committee's and DIP's concern that conversion would increase administrative expenses and engender confusion among the creditor body, without promising any meaningful recovery for unsecured creditors.

At the hearing, the court invited the UST to consent to an extension of the deadlines in § 1112(b)(3), but counsel declined to do so.  *See* 11 U.S.C. § 1112(b)(3).  Keenly aware of the tight deadlines and the court's schedule, and finding more persuasive the arguments of the parties with a financial stake in the case, the court announced its intention to deny the Conversion Motion for the reasons on the record, which the court now supplements with this opinion.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Conversion Motion (ECF No. 498) is DENIED.

IT IS FURTHER ORDERED that (i) the hearing on the Dismissal Motion is ADJOURNED to October 19, 2020 at 11:00 AM; and (ii) the Clerk will prepare and serve a hearing notice giving instructions for participating in the adjourned hearing in light of the public health emergency.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Rule 9022 and LBR 5005-4 upon (a) the Debtor; (b) the United

States Trustee; (c) CIBC Bank USA; (d) the Committee; (e) 30 West Pershing, LLC; and (f) any

party who has filed a notice of appearance or request for notice.

END OF ORDER

**IT IS SO ORDERED.**

**Dated September 16, 2020**



Scott W. Dales
United States Bankruptcy Judge